ers of the boat, and their subsequent payment of the note under it could not bring again into life that which was extinct.

Libel dismissed, each party to pay half the costs.

## Case No. 12,182.

### In re RYAN et al.

[6 N. B. R. 235.] [1]

District Court, E. D. Michigan.    Feb. 21, 1872.

#### BANKRUPTCY — ASSETS — SALE BY ASSIGNEE —RESALE.

1. An assignee acting under an order of court directing him to sell the goods of a bankrupt for the highest price he could obtain above a certain minimum specified, must comply with the order, and if it is made to appear to the court that he has not obtained the highest price offered, the sale will be set aside and the assignee directed to refund the amount received, and hold the sale open for higher offers until a day specified, when it shall be closed for the highest offer in cash received up to that time.

[Cited in Re Stevenson, 6 Fed. 711.]

2. Costs and attorney's fee of ten dollars ordered to be paid out of the funds belonging to the estate of the bankrupt.

[In the matter of Ryan & Griffin, bankrupts.]

LONGYEAR, District Judge. The assignee had been authorised by an order of the court to sell a stock of boots and shoes belonging to the bankrupts' estate, in bulk and at private sale, for the best price he could obtain, but in no event less than six thousand nine hundred dollars. Martin Brothers and Matthew J. Moynahan were competitors for the stock. Moynahan, on being applied to by the assignee to state the highest price he would pay for the stock, offered seven thousand two hundred and fifty dollars, and stated that that was the highest price he would pay. The assignee then informed Martin Brothers of Moynahan's bid, and that they could not have the stock unless they would make a better offer. They desired time to consider. The assignee gave them time, and agreed with them that if, by a certain hour, they should conclude to pay seven thousand three hundred dollars, they should have the stock. In the mean time, and before any further transactions had taken place between Martin Brothers and the assignee, Moynahan offered the assignee seven thousand five hundred dollars, and tendered five hundred dollars of the amount as earnest money. The assignee, honestly believing that he had the power to make the arrangement he had made with Martin Brothers, and that he was in honor bound to wait till the expiration of the time agreed on, and then to sell to them if they complied with the specified terms, declined to entertain Moynahan's offer, except on condition that Martin Brothers should not accept the terms specified by the time agreed on. Within the time agreed on Martin Brothers accepted the terms and

1 [Reprinted by permission.]

agreed to pay the seven thousand three hundred dollars, and paid to the assignee five hundred dollars of the amount, as earnest money, and the assignee agreed that they should have the goods. Moynahan then paid the five hundred dollars he had tendered as earnest money into court, and application was made to set aside the sale to Martin Brothers, and that the assignee be directed to entertain Moynahan's offer, and a hearing was had.

The assignee in bankruptcy is an officer of the court, and is limited in his transactions in that capacity to the powers and authority conferred upon him by the bankrupt act and the orders of the court. Anything he may do outside, or in conflict with, or in violation of, such powers and authority is, of course, null and void. In this case he was acting under an order of court, authorising and directing him to sell for the highest price he could obtain above a certain minimum specified. By his arrangement with Martin Brothers it was left entirely optional with them whether they would take the goods or not, and of course that arrangement did not amount to a sale, nor even a binding agreement to sell. The assignee's agreement with them to wait till a certain time for them to make up their minds, and then if in case they concluded to purchase at the price named, he would sell the goods to them at all events, and his refusal on account of such agreement to entertain a higher offer actually made in the meantime, were in direct conflict with and in violation of his authority and duty as specified in the order under which he was acting. The following order was made in the premises: "This matter coming on to be heard upon the order for the assignee to show cause upon the petition of Thomas Griffin, one of the said bankrupts, and the same having been heard accordingly, on consideration thereof it is ordered, adjudged and decreed that the sale to Martin Brothers by the assignee of the stock of boots and shoes heretofore authorised by an order of this court to be sold by the assignee, in bulk and at private sale, was unauthorised and in violation of the terms of the said last-mentioned order, in this, to wit: that the sale was so made to said Martin Brothers for the sum of seven thousand three hundred dollars, when a higher offer of seven thousand five hundred dollars had been made, and was then and still is pending, by one Matthew J. Moynahan; and that the said sale to Martin Brothers is therefore void and of no effect, and the same is set aside and altogether held for naught. And it is further ordered, adjudged and decreed that the said assignee be, and he is hereby directed to entertain the said offer of seven thousand five hundred dollars, so made by the said Matthew J. Moynahan, and hold the sale open for higher offers; and that he close the sale at twelve o'clock noon of the twenty-third day of February, eighteen hundred and seventy-two, for the highest offer in cash he shall receive up to that time. And it is further ordered that the assignee pay the

taxable costs of this proceeding, (including an attorney fee of ten dollars, to Lyman Cochrane, Esq.,) out of the funds in his hands belonging to the estate of said bankrupts. And it is further ordered that the assignee return to Martin Brothers any deposit or payment of money they may have made to him on account of said sale."

---

## Case No. 12,183.

### In re RYAN.

[2 Sawy. 411;[1] 5 Leg. Gaz. 263.]

District Court, D. Oregon. April 29, 1873.

BANKRUPTCY — TRADER — INSOLVENCY — PREFERENCE—ACT OF BANKRUPTCY—ATTEMPT TO RESCIND.

1. An innkeeper and retail dealer in liquor is a trader, and when he is unable to pay his debts as they become due, in money, he is insolvent, although his property may exceed in value the amount of his debts.

[Cited in Harris v. Hanover Nat. Bank, 15 Fed. 788.]

[Cited in Daniels v. Palmer, 35 Minn. 350, 29 N. W. 164.]

2. An insolvent debtor who prefers one or more of his creditors, necessarily thereby commits an act of bankruptcy.

3. Where it appears that a debtor gave a mortgage upon a large portion of his property, which mortgage purported to be given as security for a debt that in fact never existed, the reasonable conclusion is, that such mortgage was made to hinder and delay, if not to defraud, the creditors of such debtor, and is, therefore, an act of bankruptcy.

4. Where a debtor has committed an act of bankruptcy by giving an unlawful preference, or making a transfer of his property with intent to hinder, delay and defraud his creditors, he cannot discharge himself from his legal liability for such act by a subsequent rescission or undoing thereof.

Petition by F. Opitz and others to have the respondent [Thomas Ryan] adjudged a bankrupt. The cause was heard by the court without a jury, on April 22 and 23, and submitted.

John W. Whalley, for petitioners.

Richard Williams and O. P. Mason, for respondent.

DEADY, District Judge. At the filing of the petition—April 1, 1873, and since 1864—the respondent was engaged in keeping a tavern and bar in the city of Portland, Oregon, called the "Russ House."

The petition alleges that the respondent, being a trader and insolvent, committed acts of bankruptcy as follows: (1) That on January 29, 1873, he made a conveyance and transfer of the chattels in said Russ house to one Catharine Crinnion, with intent to thereby hinder, delay and defraud his creditors; and with the intent to give a preference to said Crinnion; and also with the intent to defeat and delay the operation of the bankrupt act. (2) That on February 12, 1873, he

made a payment to Henry Wilmer, and on March 1, thereafter, a payment to —— Hunsaker, with intent thereby to give each of them a preference.

The answer of respondent admits the making of the conveyance and payments, but denies the insolvency, and that either such conveyance or payments were made with the intent alleged.

The evidence proves that at the dates of the alleged acts of bankruptcy, the respondent owed not less than $1,700, and that his assets consisted of the furniture and fixtures of the Russ house, worth in cash probably $1,200; a piece of land on the macadam road worth not to exceed $150, and book accounts for board against forty-six different persons, scattered over the coast, for sums ranging from $239 to $5—amounting in all to $2,954. Some of these accounts are twelve months overdue, one fourth of them are at least six months due, and only $200 or $300 were charged within two months before the commencement of this proceeding. The opinion of the respondent's barkeeper is that $1,500 of these accounts are good—that is, the persons who owe them will pay them when they get money, and he thinks they will have money sooner or later, and some of them before long. This, of course, amounts to nothing; there is really no evidence that a single dollar can be made on these accounts by law, and the strong probability is that they are not worth a cent. For the past nine months the respondent has been falling behind with his creditors, and the probabilities are that good accounts against boarders by the week would have been collected by him as they fell due.

It also appears that for at least six months prior to the filing of the petition, the respondent was unable, and so stated to divers of his creditors, to pay the debts incurred in his business as they became due, in money; and that during that term, for that reason, he procured an extension on $700 or $800 of said debts.

As to whether the respondent's property was sufficient to pay his debts at the date of these transactions, the burden of proof is upon him. Section 41, Bankruptcy Act [of 1867 (14 Stat. 537)]; In re Randall [Case No. 11,551]; In re Silverman [Id. 12,855]. The evidence furnished by the respondent upon this point is not satisfactory, and is altogether insufficient to establish the fact that this property could have been disposed of for cash at $1,700. It must also be borne in mind that the only portion of this property which appears to have had any market value, was the furniture; and to have sold this, or any considerable portion of it, would have broken up respondent's business at once; besides at least $300 worth of it was probably exempt from execution—the respondent being a householder.

But it is immaterial whether his property was sufficient to pay his debts or not. The

---

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]