## Case No. 3,169.

### In re COOKE et al.

[11 N. B. R. 1; 10 Phila. 262; 31 Leg. Int. 357; 1 Wkly. Notes Cas. 51; 9 West. Jur. 157; 22 Pittsb. Leg. J. 59; 1 Cent. Law J. 580.][1]

Circuit Court, E. D. Pennsylvania. Oct. 28, 1874.

#### BANKRUPTCY—POWERS OF COMMITTEE.

Where the proceedings in bankruptcy have under the 43d section [of the bankrupt act of 1867 (14 Stat. 538)] been .superseded by arrangement, and the estate directed to be wound up by trustees, under the direction of a committee, the trustee is bound to accept the direction of the committee as conclusive; and neither the district court, nor a general meeting of creditors, have the right to control the discretion of the committee, unless the committee exercise their discretion mala fide. In the absence of fraud, the decision of the committee is conclusive.

[Cited in Re Hicks, 2 Fed. 852; Re Baxter, Case No. 1,122; Re Bonnett, Id. 1,634.]

[Petition to review an order of the district court of the United States for the eastern district of Pennsylvania.]

Chas. S. Pancoast and R. C. McMurtrie, Esqs., for E. W. Clark et al., creditors.

Chas. H. Sidebotham, Esq., for Yeakill.

[1] [Reprinted from 11 N. B. R. 1, by permission. 1 Wkly. Notes Cas. 51, and 1 Cent. Law J. 580, contain only partial reports.]

R. L. Ashurst, for trustee, and Samuel Dickson and J. C. Bullitt, for committee, submitted the following argument, which we publish at length, believing the profession will welcome this carefully prepared review of the history of the 43d section, to which so much additional importance has been given by the recent amendment.

This is an appeal by the trustee and committee, chosen and appointed under the provisions of the 43d section of the bankrupt act, from an order of the district court, calling a second meeting of creditors for the purposes mentioned in the 27th and 28th sections of the act. The reason assigned for a reversal of the order is: The requisite proportion of the creditors having determined that the estate should be wound up in the manner prescribed by the 43d section, and their resolution having been confirmed by the court, there is no longer any power in the district court to order a meeting of creditors for the purposes mentioned in the 27th and 28th sections of the act; nor would such meeting, if called, have any authority to make the resolutions contemplated in those sections. The preliminary objections need only be stated, the substantial question being one of power rather than of discretion.

The 43d section of the act of congress of March 2d, 1867, is, in the main, copied from the English bankrupt act of 1861 (sections 185–191), which was adopted from the Scotch bankruptcy act of 1856 (19 & 20 Vict. c. 79, §§ 35–40). For convenience of comparison they are given in parallel columns:

### Act of Congress of 1867, § 43.

If at the first meeting of creditors, or at any meeting of creditors to be specially called for that purpose, and of which previous notice shall have been given for such length of time and in such manner as the court may direct. three-fourths in value of the creditors, whose claims have been proved, shall determine and resolve that it is for the interest of the general body of creditors that the estate of the bankrupt should be wound up and settled, and distribution made among the creditors by trustees, under the inspection and direction of a committee of the creditors, it shall be lawful for the creditors to certify and report such resolution to the court, and to nominate one or more trustees to take and hold and distribute the estate, under the direction of such committee. If it shall appear to the court, after hearing the bankrupt and such creditors as may desire to be heard, that the resolution was duly passed, and that the interest of the creditors will be promoted thereby, it shall confirm the same; and upon the execution and filing by or on behalf of three-fourths in value of all the creditors whose claims have been proved, of a consent that the estate of the bankrupt be wound up and settled by said trustees according to the terms of such resolution. the bankrupt, or his assignee in bankruptcy, if appointed, as the case may be, shall, under the direction of the court. and under oath, convey, transfer. and deliver all the property and estate of the bankrupt to the said trustee or trustees, who shall, upon such conveyance and transfer, have and hold the same in the same manner and with the same powers and rights. in all respects, as the bankrupt would have had or held the same if no proceedings in bankruptcy had been taken, or as the assignee in bankruptcy would have

### 24 & 25 Vict. c. 134, §§ 185–191.

At the first meeting of creditors held after adjudication in manner herein provided, or at any meeting to be called for the purpose, and of which ten days' notice shall have been given in the London Gazette, three-fourths in number and value of the creditors present or represented at such meeting may resolve that the estate ought to be wound up under a deed of arrangement. composition. or otherwise, and that an application shall be made to the court to stay proceedings in the bankruptcy for such period as the court shall think fit.

The registrar shall report such resolution to the court within four days from the date of such resolution; and the bankrupt, or any creditor nominated in that behalf by the meeting, may then apply to the court that the proceedings in bankruptcy may be stayed in the term of such resolution; and the court, after hearing the bankrupt and such creditors as may desire to be heard for or against the resolution, and if it shall find that the resolution was duly carried, and that its terms are reasonable and calculated to benefit the general body of the creditors under the estate, shall confirm the same and make order accordingly, and in such order shall give such directions as to the interim management of the estate as it shall deem expedient.

If the proceedings in bankruptcy be stayed as herein provided, the bankrupt, or any creditor nominated in that behalf by the meeting aforesaid, may, at any time within the period during which the proceedings are so stayed, produce to the court a deed of arrangement signed by or on behalf of three-fourths in number and value of all the creditors of the bankrupt, and the court may consider the same, and may examine on oath the bankrupt and any

done had such resolution not been passed; and such consent, and the proceedings thereunder shall be as binding in all respects on any creditor whose debt is provable, who has not signed the same, as if he had signed it, and on any creditor whose debt, if provable, is not proved, as if he had proved it; and the court, by order, shall direct all acts and things needful to be done to carry into effect such resolution of the creditors; and the said trustee shall proceed to wind up and settle the estate, under the direction and inspection of such committee of the creditors, for the equal benefit of all such creditors; and the winding up and settlement of any estate, under the provisions of this section, shall be deemed to be proceedings in bankruptcy under this act, and the said trustee shall have all the rights and powers of assignees in bankruptcy.

The court, on the application of such trustees, shall have power to summon and examine, on oath or otherwise, the bankrupt and any creditor, and any person indebted to the estate, or known or suspected of having any of the estate in his possession, or any other person whose examination may be material or necessary to aid the trustees in the execution of their trust, and to compel the attendance of such persons and the production of books and papers, in the same manner as in other proceedings in bankruptcy under this act; and the bankrupt shall have the like right to apply for and obtain a discharge after the passage of such resolution and the appointment of such trustees, as if such resolution had not been passed, and as if all the proceedings had continued in the manner provided in the preceding sections of this act.

If the resolution shall not be duly reported, or the consent of the creditors shall not be duly filed, or if, upon its filing, the court shall not think fit to approve thereof, the bankruptcy shall proceed as though no resolution had been passed, and the court may make all necessary orders for resuming the proceedings; and the period of time which shall have elapsed between the date of the resolution and the date of the order for resuming proceedings shall not be reckoned in calculating periods of time prescribed by this act.

of the creditors who may desire to be heard in support of or in opposition to the deed, and may make such other inquiry as it may think necessary; and if the court shall be satisfied that the deed has been duly entered into and executed, and that its terms are reasonable and calculated to benefit the general body of the creditors under the estate, it shall, by order, make a declaration of the complete execution of the deed, and shall direct the same to be registered with the chief registrar, and shall also, if it thinks fit, annul the bankruptcy, and such deed shall thereafter be as binding in all respects on any creditor who has not executed the deed as if he had executed it, provided such deed be registered with the chief registrar in manner directed by the order.

Either before or after such order, the court shall have jurisdiction to entertain any application of the bankrupt, or of any party to the deed, or of any creditor or person claiming to be a creditor, respecting the disclosure, distribution, inspection, conduct, management, or winding up of the bankrupt's estate and affairs, or any act or thing relating thereto, or respecting the execution of any of the trusts or provisions of the deed, or the audit or examination of the accounts of a trustee or inspector, or the taxation or examination of the costs or charges of any attorney, solicitor, accountant, auctioneer, broker, or other person acting or employed under the deed, or generally for the decision of any dispute or question, and shall also have jurisdiction to entertain any application of any such person as aforesaid, respecting any matter for the submission whereof to the court provision is made by the deed, or any matter arising between any of the said persons and any other persons appearing and submitting to the jurisdiction of the court; and the court shall determine all questions arising under the deed according to the law and practice in bankruptcy, so far as they may be applicable, and, on entertaining any such application, shall have power to make all such orders as shall seem just, and to enforce all such orders as in bankruptcy.

The court shall have power, for the purpose of any application under these provisions, or for the better execution of any powers given to the court thereby, to summon and to examine, upon oath or otherwise, the bankrupt and any party to the deed, and any creditor, or person claiming to be a creditor, and any person known or suspected to have any of the estate in his possession, or any person supposed to be indebted to the estate, or whom the court may deem capable of giving any information material to the full disclosure of the debtor's transactions and affairs, or to the carrying into effect the provisions of the deed; and the court may exercise, as to the examination of such persons, and the production by them of any such books, papers, deeds, or documents as it shall deem requisite, the same powers that are vested in the court with relation to the examination of persons and witnesses, and the production of books, papers, deeds, and documents in matters of bankruptcy.

If the resolution aforesaid shall be duly reported, or if the court shall refuse the application to stay proceedings, or if the deed of arrangement shall not be duly produced, or if upon its production the court shall not think fit to approve thereof, the bankruptcy shall proceed as though no such resolution had been passed, and the court may make all necessary orders for resuming the proceedings in bankruptcy; and the period of time which shall have elapsed between the date of such resolution and the date of the order for resuming proceedings shall not be reckoned in calculating periods of time prescribed by this act.

If the bankruptcy be annulled as herein provided, the order annulling the same shall be filed with the proceedings, and notice thereof shall be given in the "London Gazette."

The first attempt in England to give a majority of the creditors of a bankrupt the right to control the settlement of the estate or enforce a compromise which would enable the bankrupt himself to wind up the estate, was made in the act of 6 Geo. IV. §§ 133, 134. By that act nine-tenths in number and value of the creditors might accept a composition which would bind the rest of them. Eden says (Bankr. Law, 443): "The new statute has introduced, from the Scottish sequestration act, a new provision of terminating the bankruptcy, by what is called, in Scotland, a composition contract. All parties, it has been there found, derive advantage from it; the bankrupt can commonly make much more out of the wreck than any one else can, the expense of managing the funds is saved, and the creditors have a certain definite sum to rely on, with surety for its payment." Of course, after such a composition was accepted the proceedings in bankruptcy were at an end. The act of 1849, §§ 211–223 [12 & 13 Vict. c. 106], contemplated two kinds of arrangement—namely, arrangement under the control of the court, and arrangement by deed, independently of the court. The first required the sanctioning of three-fifths of the creditors; an arrangement by deed required the approval of six-sevenths. Jurisdiction was given to the court to interfere if the estate was not properly administered under the deed. The form of a deed of arrangement under this act, which was approved by the court, is given in Irving v. Gray, 3 Hurl. & N. 34. This deed allowed the inspectors to direct and authorize the debtors to carry on and conduct the business in such way as they should think expedient, and generally gave them the right to wind up according to their discretion. Robson says (Law Bankr. 628, Ed. 1872) that: "Objections were made to the provisions of the act of 1849, respecting arrangements by deed, on the ground that they did not enable a composition to be made without a cessio bonorum; and also, that they did not protect a debtor from the proceedings of a hostile creditor pending negotiations for an arrangement. To meet these objections some new provisions, as to arrangement with creditors, were introduced into the bankruptcy act of 1861, in lieu of the clauses for that purpose in the act of 1849. They provided for the allowance to the debtor of a limited period to obtain the assent of his creditors to such an arrangement, without the risk of bankruptcy, and they did not require a cessio bonorum to make an arrangement or composition binding on dissenting creditors; but they empowered a majority in number and three-fourths in value of the creditors to bind the minority, providing the deed effecting the arrangement or composition was duly registered in the court of bankruptcy within twenty-eight days after the execution thereof by the petitioner." The full text of the sections of the act of 1861 [supra], providing for the change from bankruptcy to arrangement or composition, which was borrowed from the Scotch bankruptcy act of 1856 (19 & 20 Vict. c. 79, §§ 35–40) has already been given.

The important provisions of the sections relating to the liquidation by arrangement are as follows:—

"Section 192. Every deed or instrument made or entered into between a debtor and his creditors, or any of them, or a trustee on their behalf, relating to the debts or liabilities of the debtor or his release therefrom, or the distribution, inspection, management, and winding up of his estate, or any of such matters, shall be as valid and effectual and binding on all the creditors of such debtors as if they were parties to and had duly executed the same, provided the following conditions be observed—that is to say: First. A majority in number, representing three-fourths in value of the creditors of such debtor, whose debts shall respectively amount to £10 and upwards, shall, before and after execution thereof by the debtor, in writing, assent or approve of such deed or instrument. Second. If a trustee or trustees be appointed by such deed or instrument, such trustee or trustees shall execute the same. Third. The execution of such deed or instrument by the debtor shall be attested by an attorney or solicitor. Fourth. Within twenty-eight days from the date of the execution of such deed or instrument by the debtor, the same shall be produced and left (having been first duly stamped) at the office of the registrar, for the purpose of being registered. Fifth. Together with such deed or instrument there shall be delivered to the chief registrar an affidavit by the debtor or some person able to depose thereto, or a certificate by the trustee or trustees, that a majority in number, representing three-fourths in value, of the creditors of the debtor, whose debts amount to £10 or upwards, have, in writing, assented to or approved of such deed or instrument, and also stating the amount in value of the property and credits of the debtor comprised in such deed. Sixth. Such deed or instrument shall, before registration, bear such ordinary and ad valorem stamp duties as are hereafter provided. Seventh. Immediately on the execution thereof by the debtor, possession of all the property comprised therein, of which the debtor can give or order possession, shall be given to the trustee."

"Section 197. From and after the registration of every such deed or instrument in manner aforesaid, the debtor and creditors and trustees, parties to such deed, or who have assented thereto or are bound thereby, shall, in all matters relating to the estate and effects of such debtor, be subject to the jurisdiction of the court of bankruptcy, and shall respectively have the benefit of and be liable to all the provisions of this act, in the same or like manner as if the debtor had been adjudged a bankrupt, the creditors had proved, and the trustees had been appointed

creditors' assignees under such bankruptcy; and the existing or future trustees of any such deed or instrument, and the creditors under the same, shall, as between themselves respectively, and as between themselves and the debtor and against third persons, have the same powers, rights, and remedies with respect to the debtor and his estate and effects, and the collection and recovery of the same, as are possessed or may be used or exercised by assignees or creditors with respect to the bankrupt, or his acts, estate, and effects in bankruptcy; and, except where the deed shall expressly provide otherwise, the court shall determine all questions arising under the deed, according to the law and practice in bankruptcy, so far as they may be applicable, and shall have power to make and enforce all such orders, as it would be authorized to do if the debtor in such deed had been adjudged bankrupt and his estate was administered in bankruptcy.

"Section 198. After notice of the filing and registration of such deed has been given as aforesaid, no execution, sequestration, or other process against the debtor's property in respect to any debt, and no process against his person in respect of any debt, other than such process, by writ or warrant, as may be had against a debtor about to depart out of England, shall be available to any creditor or claimant without leave of the court; and a certificate of the filing and registration of such a deed, under the hand of the chief registrar and the seal of the court, shall be available to the debtor for all purposes, as a protection in bankruptcy.

"Section 199. In case any petition shall be presented for an adjudication in bankruptcy against a debtor after his execution of such deed or instrument as is hereinafter described, and pending the time allowed for the registration of such deed or instrument, all proceedings under such petition may be stayed, if the court shall think fit; and in case such deed or instrument shall be duly registered as aforesaid, the petition shall be dismissed."

In respect to the provisions in the English act of 1861, Shelford says (Law & Pr. Bankr. pp. 620, 621): "The clauses included under this section are entirely new, and have been substituted for the repealed sections (224-229) of the act of 1849. The clauses (224-229 of the act of 1849) were introduced with a view to enable a large majority of creditors to make arrangements with their debtor which would bind the minority for the due distribution of the estate among them. The principle of them was not new, for the 6 Geo. IV. c. 16, §§ 133, 134, introduced from the Scottish sequestration act new power to terminate a bankruptcy, by what is termed in Scotland a composition contract. By that act nine-tenths in number and value of the creditors might accept a composition which would bind the rest of them. See Eden, Bankr. Law (3d Ed.) pp. 443-448.

The bankers, merchants, and traders in the city of London, in the year 1847, concurred in a statement that it is very advantageous to the 'mercantile community that in all cases of commercial insolvency any mode of liquidation which shall be approved of by a proper majority of the creditors, whether by trust, composition, inspection, or otherwise, should be binding on the rest, and that a small number of dissenting creditors should not be enabled to frustrate such mode of liquidation.' The commissioners under the bankruptcy commission (1854) concurred in that statement, provided there is a large and bona fide majority of creditors who desire a composition or other arrangement out of court as most conducive to their own interests, and the consent of the majority was neither collusively nor fraudulently obtained."—Report of Commissioners, 1854, p. 20.

The bankrupt act of 1869 provides for a liquidation by arrangement, and the acceptance of composition without actual bankruptcy. Under liquidation by arrangement the property is vested in a trustee, without a deed, to be administered under the control of the court, as in bankruptcy, and a composition may be made effectual by a vote of the creditors, at meetings of creditors, without adjudication. The details of the act, in reference to liquidation or composition, need not be stated more at length. The proceedings in liquidation are expressly made proceedings in bankruptcy; but "where no committee of inspection is appointed the trustee may act on his own discretion in cases where he would otherwise have been bound to refer to such committee."

The "committee of inspection," though commonly provided for in the forms for deeds of arrangement, was first mentioned in the English statutes in the 14th section of the act of 1869. The third paragraph is as follows:—

"They (the creditors) shall, by resolution, appoint some other fit persons, not exceeding five in number, and being creditors qualified to vote at such first meeting of creditors, as in this act mentioned, or authorized in the prescribed form by creditors so qualified to vote, to form a committee of inspection for the purpose of superintending the administration, by the trustees, of the bankrupt's property."

By the 27th section it is provided that the trustee, with the sanction of the committee of inspection, may do all or any of the following things:—First. Mortgage or pledge any part of the property of the bankrupt for the purpose of raising money for the payment of his debts. Second. Refer any dispute to arbitration, compromise all debts, claims, and liabilities, whether present or future, certain or contingent, liquidated or unliquidated, substituting or supposed to substitute, between the bankrupt and any debtor or person who may have incurred any lia-

bilities to the bankrupt, upon the receipt of such sums, payable at such times and generally upon such terms as may be agreed upon. Third. Make such compromise or other arrangement as may be thought expedient with the creditors or other persons claiming to be creditors in respect to any debts provable under the bankruptcy. Fourth. Make such compromise or other arrangement as may be thought expedient, with respect to any claim arising out of or incidental to the property of the bankrupt, made or capable of being made on the trustee, by any person, or by the trustee on any person. Fifth. To divide in its existing form amongst the creditors, according to its estimated value, any property which, from its peculiar nature or other special circumstances, cannot be advantageously realized by sale.

The 43d section provides:—"The trustee shall, from time to time, when the committee of inspection determines, declare a dividend amongst the creditors who have proved to his satisfaction debts provable in bankruptcy, and shall distribute the same accordingly: and in the event of his not declaring a dividend for the space of six months, he must summon a meeting of the creditors, and explain to them his reasons for not declaring the same."—Bankr. Act 1869, § 41; Robs. Bankr. 517.

The 83d section makes certain regulations as to the trustee and committee of inspection, and the seventeenth paragraph of the section provides that, "where there is no committee of inspection, any act or thing, or any direction or consent by this act authorized or required to be done or given by such committee, may be done or given by the court on the application of the trustee."

The provisions of the act of congress of June 22d, 1874 [18 Stat. 178], in reference to composition with creditors, are borrowed from the 126th section of the English act of 1869, and are introduced by the words, "That the following provisions be added to section 43 of said act."

It will thus be seen that the 43d section of the act of 1867 was borrowed from a system which had been previously tested, both in Scotland and in England, and which had for its object the withdrawal of the management of bankrupt estates from the courts, and the placing of their administration, either directly in the hands of the bankrupt himself, if a composition could be agreed upon, or in those of the immediate representatives of the creditors. The power of binding a minority by a composition agreement was not given by congress till its last session, but the admirable device of a committee of inspection and direction was certainly not added to the plan of "liquidation by arrangement," in order to impair the powers of the creditors, or enlarge those of the courts, and the true scope and intent of that provision can be best discovered in

the definition of the functions of the committee which is given in the English statute of 1869. Nor is it without significance, that, beginning with the act of 6 Geo. IV., both parliament and congress have steadily added to the powers of the majority of the creditors, and yielded more and more to the desire of mercantile men to control and manage their own business.

Studied in the light of past and subsequent legislation, it would seem clear that when three-fourths of the creditors of a bankrupt estate have resolved that it shall be wound up by a trustee, under the inspection and direction of a committee, the ordinary powers of the district court are suspended; and beyond all question that the general meetings of creditors which need only consist of one-half of the creditors, and the action of which may be controlled by a bare majority, or little more than one-fourth of the whole number, have no power to control or direct the action of the representatives of three-fourths of the creditors. How large are the powers of those meetings will be seen by a reference to the 27th and 28th sections of the act of 1867, for the purposes of which the meeting of October 6th was ordered.

It is submitted that the powers given by these sections cannot be exercised where the estate is being wound up under the 43d section, both because they are not expressly given with reference to such a contingency, but are, on the contrary, by necessary implication, withheld; and because, the discretion being confided to the trustee and committee, it cannot be controlled, so long as honestly exercised. Much less could the trustee himself, without the committee, determine the questions which must be decided by the assignee when less than one-half in value of the creditors attend the meeting. In the official copy of the statutes, the 43d section is entitled, "Of superseding the bankruptcy proceeding by arrangement." The resolution provided for is, that "the estate should be wound up, settled, and distribution made among the creditors by trustees, under the inspection and direction of a committee of the creditors." These words are large enough to embrace the entire control and management of the estate. To wind up, settle, and distribute is to do all that is to be done; to inspect and direct how it is to be done is to determine when and how it shall be done. In the case of an assignee, the election is subject to the approval of the judge, who may appoint additional assignees, or order a new election (section 14), and the deed of assignment is executed by the judge or the register; but the choice of the creditors for trustee or committee must be accepted, if the resolution is confirmed and the assignment to the trustee is executed by the bankrupts in person. The resolution may be passed after the assignee has been appointed, and in that event he is to make the con-

veyance to the trustee. To enable the trustee to examine the bankrupt and others, express power is given to compel their attendance. If the resolution is not approved, the bankruptcy "shall proceed as though no resolution had been passed.". And the period of time which shall have elapsed between the date of the resolution and the date of the order for resuming the proceedings is not to be reckoned—a clause which is in terms inconsistent with the terms of the sections under which this meeting was called. Nor can the restrictions on the power of an assignee be held to limit the action of a trustee acting with the approval of the committee. By general order fourteen, an order for the redemption of a pledge or composition of a debt can only be obtained by an assignee, at a hearing upon petition, after ten days' notice. By order twenty-one, personal property can only be sold by an assignee after ten days' notice, and real estate after twenty days' notice, unless special cause be shown. And, finally, the supreme court has put an interpretation on the section, in the form prepared under its authority for the order of the court, to be entered upon the confirmation of the resolution of the creditors. (Form sixty-three.) That form is as follows: "Order of Court. The foregoing proceedings, under the 43d section of the bankrupt act of March 2d, 1867, having been placed on file and read, it is ordered that all proceedings upon said petition in bankruptcy be stayed until the further order of the court. Witness, etc."

From this review of the history of legislation upon this subject and an examination of the section itself, it is believed that it has been made apparent that a winding up by a trustee is essentially different from that by an assignee.

[For the order setting down the argument of this motion, see Case No. 3,171.]

STRONG, Circuit Justice. This is an application made by the trustee and committee chosen and appointed under the 43d section of the bankrupt act, as well as by some of the creditors of the bankrupts, for a review of an order of the district court directing a second meeting of creditors for the purposes stated in the 27th and 28th sections of the act.

Several objections have been made to the order, only one of which do we propose now to notice. It is that three-fourths in value of the creditors whose claims have been proved, having determined that the estate shall be wound up in the manner prescribed by the 43d section, and their resolution having been confirmed by the district court, there is no longer any power in that court to order a meeting of creditors for the purposes mentioned in the 27th and 28th sections of the bankrupt act, and that such meeting, if called, would have no authority to resolve and direct as contemplated in those sections.

The bankrupt act of 1867 has very plainly provided two very different systems for winding up, settling, and distributing the estates of bankrupts. The first, and the ordinary one, is that presented by the 27th and 28th sections, applicable to all cases when the greater part of the creditors in number or in value who have proved their debts, at their first meeting choose an assignee, or assignees, or where the district judge or the register appoints one or more assignees. In such cases the 27th section requires that a general meeting of the creditors be called at the expiration of three months from the adjudication of bankruptcy, or earlier if the court so direct, and requires the assignee to report to the meeting as well as to the court an account of his receipts and payments. The assignee is also required to submit to the meeting the schedule of the bankrupts, creditors, and property as amended, and a statement of the whole estate of the bankrupts as then ascertained, of the property recovered and of the property outstanding, specifying the cause of its being outstanding, also what debts or claims are yet undetermined, and stating what sum remains in his hands. The section further enacts that at such meeting the majority in value of the creditors present shall determine whether any, and what part of the proceeds of the estate, after certain deductions, shall be divided among the creditors, with a proviso that unless at least one-half in value of the creditors shall attend such meeting either in person or by attorney, it shall be the duty of the assignee so to determine, and in case a dividend is ordered, the assignee is required to pay it under the direction of the court.

By the 28th section provision is made for a second and third meeting of the creditors, with like powers, and it is enacted that at the third meeting called by the court a final dividend shall be declared, unless an action at law or suit in equity be pending, or unless some other estate or effects of the debtor afterwards come to the hands of the assignee, in which case the assignee shall, as soon as may be, convert such estate or effects into money, and within two months after the same shall be so converted, it is required to be divided in manner aforesaid. It is further directed that after the third meeting of the creditors no further meeting shall be called, unless ordered by the court; and it is enacted that if at any time there shall be in the hands of the assignee any outstanding debts, or other property due or belonging to the estate which cannot be collected and received by the assignee without unreasonable or inconvenient delay or expense, the assignee may, under the direction of the court, sell and assign such debts or other property in such manner as the court shall order.

Thus it appears that under these provisions very large powers over the winding up, set-

tlement, and distribution of a bankrupt's estate are given to the district court and to a majority in value of the creditors who may be present at a general meeting, or, in case a majority in value are not present at the meeting, to the assignee. But the 43d section of the act prescribed another system, the obvious purposes of which were to arrest the ordinary mode of proceeding to wind up, settle, and distribute a bankrupt's estates, to suspend some of the powers conferred upon the district court, and to confer upon representatives of the creditors authority not to be exercised by the general body. The system was extraordinary. It was borrowed from a system which had previously existed in Scotland and in England, which had for its object the withdrawal of the bankrupt's estate from the courts in certain cases, and placing its administration in the charge of the bankrupt himself, or in that of the chosen representatives of the creditors.

An examination of the provisions of that section shows very clearly that such was its object, and that the powers conferred thereby are inconsistent with the continued existence of the powers given by the 27th and the 28th sections. It is entitled "Of Superseding the Bankrupt Proceedings by Arrangement." It is true, proceedings under it are declared to be proceedings in bankruptcy, but the ordinary proceedings are superseded by it, and a different system is substituted. It enacts that "if, at the first meeting of creditors, or at any meeting of creditors to be specially called for that purpose, and of which previous notice shall have been given for such length of time and in such manner as the court may direct, three-fourths in value of the creditors whose claims have been proved shall determine and resolve that it is for the interest of the general body of creditors that the estate of the bankrupt should be wound up and settled, and distribution made among the creditors by trustees, under the inspection and direction of a committee of the creditors, it shall be lawful for the creditors to certify and report such resolution to the court, and to nominate one or more trustees to take and hold and distribute the estate under the direction of such committee. If it shall appear to the court, after hearing the bankrupt and such creditors as may desire to be heard, that the resolution was duly passed, and that the interest of the creditors will be promoted thereby, it shall confirm the same; and upon the execution and filing by or on behalf of three-fourths in value of all the creditors whose claims have been proved, of a consent that the estate be wound up and settled by said trustees according to the terms of such resolution, the bankrupt, or his assignee, if one has been appointed, is required to convey all the property and estate of the bankrupt to the trustee nominated, who thenceforth shall hold it with all the powers and rights which the bankrupt would have had if no proceedings in bankruptcy had been taken, or as the assignee would have had were no such resolution passed, and with all the rights and powers of assignees in bankruptcy."

The section also declares that the consent of the three-fourths in value of all the creditors whose claims have been proved, when filed, and the proceedings thereunder, shall be as binding in all respects on any creditor whose debt is provable, who has not signed the same, as if he had signed it, and on any creditor whose debt, if provable, is not proved, as if he had proved it, and the trustee is directed to proceed to wind up and settle the estate, under the direction and inspection of such committee of the creditors. Still further, it is enacted, that the bankrupt shall have the like right to apply for and obtain a discharge after the passage of such resolution and the appointment of such trustee, as if such resolution had not been passed, and as if all the proceedings had continued in the manner provided in the sections of the act preceding the 43d. This last provision, if it were the only one, would leave no doubt in our minds that the manner of winding up, settling, and distributing the estate was intended to be different from that contemplated by the 27th and 28th sections of the act. And if this is not so, the 43d section has accomplished no practical results.

If, when three-fourths in value of the creditors who have proved their debts have resolved that the estate shall be wound up, settled, and distributed under the direction, not of the court, or the general body of the creditors, but of a committee chosen by them, and their resolution has been confirmed by the court, and when consent to such an administration has been filed, either the court, or a general meeting of the creditors, can control the discretion thus vested in the committee; if a general meeting of creditors composed of one-half in value may determine what part of the estate shall be divided, and when a dividend shall be made, how does the manner of administering the estate differ in substance from the ordinary manner prescribed in the 27th and the 28th sections? What becomes of the power of the committee to direct the settlement and distribution? Moreover, it is worthy of observation that three-fourths in value of the creditors are required for the adoption of the resolution, and only one-half in value are required by the 27th section to constitute a creditors' meeting, competent to exercise the powers described in that section. May a majority of the creditors in value, present at such a meeting, annul or override the action of the trustee and committee chosen by three-fourths? If so, how can it be said that the creditors who did not sign the consent that the estate should be wound up, settled, and distributed according to the terms of the res-

olution adopted by three-fourths and confirmed by the court are bound by the consent and proceedings thereunder, as the statute declares they shall be?

The questions when a dividend shall be made, and what portion of the estate in the trustee's hands shall be divided at any particular time, as well as what sums shall be retained to provide for all undetermined claims not proved, other expenses. and contingencies, are questions relating directly to the settlement and distribution of the estate. By directing that over the settlement and distribution the creditors' committee shall have the direction, the statute, in our opinion, has withdrawn control over them from every other power, and to that extent has superseded the ordinary proceedings in bankruptcy. And this, we think, was not without reason. The ordinary proceedings are intended to be summary. It is intended by them to conclude the settlement and distribution with the utmost dispatch. Thus, the 28th section requires a second meeting of creditors to be called at the expiration of six months from the adjudication of bankruptcy, or earlier, and at a third meeting, when a final dividend is to be declared, unless an action at law or a suit in equity be pending, or other estate come to the hands of the assignee, in which case he is required to convert it into money, as soon as may be, and within two months after such conversion the money is directed to be divided. And it is provided that if at any time there shall be in the hands of the assignee any outstanding debts or other property which cannot be collected and received by him without unreasonable delay or expense, he may sell such debts or property under the direction of the court. It was such hurried settlement of the estate that was regarded as prejudicial in some cases to the interests of the creditors. For this reason, both in the Scotch and English law, provision was made for administering bankrupt estates in some cases by the creditors themselves, or by the bankrupt under their direction. And for the same reason the 43d section of our act was enacted, by which the power to direct was given to certain representatives of the creditors; that is, to a committee chosen by them. No doubt if that committee exercise their discretion mala fide they may be controlled, but in the absence of fraud their direction to the trustee must be conclusive. Certainly the discretion vested in them cannot be controlled by any meeting of the creditors called after their appointment.

Holding such opinions, we feel constrained to reverse the order of the district court, which directed a second meeting of the creditors of the bankrupts for the purposes mentioned in the 27th and 28th sections of the bankrupt act. The order of the district court is reversed.