## Case No. 17,466.

### In re WETMORE et al.

#### [16 N. B. R. 514.] [1]

District Court, E. D. Michigan. 1877.

BANKRUPTCY—ELECTION OF ASSIGNEE—CONFIRMATION BY COURT—RIGHTS OF MINORITY.

1. Where the assignee chosen had been for several years the bookkeeper of one of the bankrupts, and said bankrupt and his attorney endeavored to control the action of the meeting in electing him, and both voted for him on powers of attorney, confirmation was refused, although the election was almost unanimous, as it appeared that a large number of individual creditors of said bankrupt were not and could not, under the law, be represented at such meeting.

2. The district judge is bound to see that the rights of the minority are protected, and to refuse confirmation where he has good reason to suspect the assignee has been chosen in the interests of the bankrupts, or if the circumstances are such as to indicate that the election was not a fair one.

[In the matter of Wetmore & Bro., bankrupts.]

On objections to confirmation of assignee. On the 25th of August a meeting was held before the register, at which thirty-five creditors, representing thirty-five thousand nine hundred and fifty-five dollars, voted for Mr. Williams, and three creditors, representing one thousand and forty-four dollars, voted against him. The matter came before the court upon objections filed by these three creditors, certified by the register with his opinion that the election should be approved by the judge.

George W. Moore, for objecting creditors.

D. H. Ball and H. W. Montrose, for assignee.

BROWN, District Judge. While the choice of an assignee is vested by law in a majority in number and amount of the creditors, it is subject, nevertheless, to the approval of the district judge—a provision which implies a discretionary power to disapprove the choice so made. While the judge ought not arbitrarily, capriciously, or from dislike or partiality, to overrule the decision of the creditors, he is bound to see that the rights of the minority are properly protected, and to refuse confirmation where he has good reason to suspect the assignee has been chosen in the interest of the bankrupts. In re Bliss [Case No. 1,543]. I think he is not bound to find as a fact that the assignee is incompetent, corrupt, or unfit, but may decline to approve if the circumstances are such as to indicate the election was not a fair one, or that the assignee will not truly represent the body of the creditors. In re Clairmont [Id. 2,781]. For example, any interference of the register in the election is wholly unwarrantable and improper. In re Smith [Id. 12,971]. A creditor who has received an unlawful preference is ineligible by the statute. A

1 [Reprinted by permission.]

near relative of the bankrupt is regarded as objectionable. In re Powell [Id. 11,354]; In re Bogert [Id. 1,598]. And the practice of soliciting votes by a candidate who was a stranger to the creditors, and made it a regular business to seek out creditors and persuade them to vote for him, has been held to vitiate an election. In re Doe [Id. 3,957]; In re Mallory [Id. 8,990]. And in one case the fact that the assignee was the confidential clerk of the bankrupt's attorney was considered good reason for withholding approval of the choice. Id. In cases of common law assignments, wherever like relationships are shown, the parties are held to stricter proof of the fairness of the transaction. "Any relation which gives rise to confidence, though not a badge of fraud, strengthens the presumption that may arise from other circumstances, and serves to elucidate, explain or give color to the transaction." Bump, Fraud. Conv. p. 96. Indeed, cases under the bankrupt law are numerous where judges have refused to confirm, though no evidence was produced of incapacity or want of integrity.

In the case under consideration, Mr. Williams, the choice of the creditors, had been for several years the bookkeeper of Mr. William L. Wetmore, one of the bankrupts. Mr. Wetmore and his attorney were present at the first meeting of the creditors and procured an adjournment, urging as a reason that many additional claims would be proved. Several of those claims were subsequently proved, and the vote of the creditors, except in three instances, cast for Mr. Williams. Mr. Wetmore and his attorney attended the adjourned meeting, endeavored to control its action, and both voted under powers of attorney received from different creditors, and made an effort to have the bond fixed at five thousand dollars, which, considering the assets are eight hundred thousand dollars, may be regarded as a merely nominal amount. It also appeared that five depositions in proof of debts were made upon blanks obtained by Wetmore from the register, all of whom voted for the same candidate; that one creditor to the amount of over ten thousand dollars, more than one-quarter of the amount represented at the meeting, voted with the majority, and that it had a claim against the bankrupts only as endorser upon paper, the makers of which were responsible; that an attorney representing one of the larger creditors was a relative by marriage, and had been in the employ of the bankrupt as clerk; that the son, wife, and brother-in-law of one of the bankrupts also proved debts and voted with the majority; that the wife of a partner of a bankrupt in another company also proved a large claim and cast her vote in the same direction; that a short time prior to the institution of proceedings, one of the bankrupts executed to his son and also to his partners deeds of land acknowledged before Mr. Wil-

liams as notary public. I am satisfied, too, from the testimony, that one of the bankrupts, prior to the meeting, was actively engaged soliciting votes for his candidate, and made some efforts to secure his election.

While perhaps none of the above facts standing alone would justify a refusal to confirm, taken together they raise in my mind a very grave suspicion that the election was really in the interest of the bankrupts. It is true the majority in number and amount was very large. Out of forty-three creditors, representing thirty-nine thousand three hundred and eighty-eight dollars, thirty-five representing thirty-five thousand nine hundred and fifty-five dollars voted for Mr. Williams, and but three, representing one thousand and forty-four dollars, voted against him. In fact, the election was so nearly unanimous I should feel almost justified in refusing to listen to the protest of the minority, were it not that the individual creditors of William L. Wetmore, aggregating some eight hundred thousand dollars, were not, and under the law could not be, represented at the meeting. In re Scheiffer [Case No. 12,445]. They are, however, entitled to the protection of the court, and the very fact of their inability to vote renders it the more necessary that the assignee thus chosen by a small fraction of the creditors should be not only above cavil, but beyond suspicion. While there is not the slightest imputation upon the character of the assignee, the evidence that he was elected in the interest of the bankrupt is too strong to justify my approval of the choice.

An order will be entered referring it to the register to call a new election. The register is further instructed to receive no votes cast by the bankrupts or their solicitors of record under powers of attorney from other creditors, and to fix the bond at not less than fifty thousand dollars. There is also a discretion in the register to postpone the proof of debts about which there is any doubt until after the election of an assignee, and I think this discretion should be exercised where claims are presented by the wife or son of the bankrupt, unless it be made entirely clear that they are just debts against the estate. In re Northern Iron Co. [Case No. 10,322]; In re Jackson [Id. 7,123].