| | | | |
|---|---|---|---|
| For balance due on yarn, delivered but not paid for | | $5,674 66 | |
| Less credit of | | 800 37 | |
| | | $4,874 29 | |
| Interest thereon: | | | |
| (a) As to $2,382.99 from November 10, 1904, less deduction of $1.96, merchandise returned, and credit of $789.41, March 9, 1905 | $111 20 | | |
| (b) As to $2,561.10, from December 10, 1904.. | 138 30 | | |
| (c) As to $730.63, from February 10, 1905.... | 32 15 | | |
| | | $281 65 | $5,155 94 |
| Loss on resale of unaccepted yarn | $350 17 | | |
| Interest thereon from April 14, 1905 | 11 56 | | |
| | | | 361 73 |
| | | | $5,517 67 |

## In re COLUMBIA IRON WORKS.

(District Court, E. D. Michigan, S. D.  April 18, 1904.)

1. BANKRUPTCY—ADMINISTRATION OF ESTATE—MATTERS TO BE DETERMINED BY COURT.

It is the policy of the bankruptcy law to commit the administration of estates of bankrupts to persons who are disinterested and will act for all of the creditors, and not in the interests of any particular faction, and in view of such policy the appointment of appraisers, which by Bankr. Act July 1, 1898, c. 541, § 70b, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], is required to be made by the court, should be made by the referee in the exercise of his independent judgment and should not be submitted to a vote of the creditors, especially where there is a sharp conflict of views and interests between creditors; nor, for the same reason, should the manner in which the property shall be sold, whether in bulk or in parcels, be submitted to the vote of the creditors.

2. SAME—TRUSTEE—RIGHT TO SELECT COUNSEL.

It is error for a referee in bankruptcy to permit the creditors by a majority vote to select the attorney for the trustee; the right to make such selection being in the trustee, subject only to control by the court.

3. SAME—COUNSEL FOR TRUSTEE—CONFLICTING EMPLOYMENTS.

Where there are disagreements between factions of creditors as to the manner of administering a bankrupt estate, the court will not approve the selection by the trustee of an attorney who also represents and continues to act for certain of the creditors.

4. SAME—ALLOWANCE OF SECURED CLAIMS—REVIEW.

Bankr. Act July 1, 1898, c. 541, § 56b, as supplemented by section 57f, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443], provides for the voting valuation of claims which exceed in amount the securities or priorities of the creditors, and the ascertainment of the excess prior to the final determination of the amount to be credited as the basis of a dividend as provided by section 57h. On such hearing both the claimant and object-

ing creditors are entitled to be heard and to adduce testimony, and the allowance can be reviewed only on a petition by the trustee or another creditor for a re-examination.

[Ed. Note.—Appeal and review in bankruptcy cases, see note to In re Eggert, 43 C. C. A. 9.]

5. SAME—CREDITORS' MEETINGS—CREDITORS ENTITLED TO VOTE.

Where objections are filed to a claim, on the ground that the claimant has received a preference, he should not be permitted to participate in creditors' meetings until the matter has been heard and determined.

6. PROXY TO BANKRUPT'S ATTORNEY.

A power of attorney from a creditor of a bankrupt, running jointly to one of the bankrupt's attorneys and another, does not entitle either to vote on such claim at a creditors' meeting.

7. SAME—APPRAISERS—DISQUALIFYING INTEREST.

A person is not disqualified for appointment as an appraiser of a bankrupt's property merely because some of the officers and directors of a corporation creditor are also officers and directors of another corporation of which such appraiser is president.

In Bankruptcy. On certificate from referee, and exceptions of creditors.

Bernard B. Selling, for trustee.

William B. Hatch, for excepting creditors.

Walker & Spaulding, for other creditors.

SWAN, District Judge. On February 11, 1904, an adjourned meeting of creditors of the bankrupt was held, at which the referee presided. To the proceedings of the meeting, eighteen exceptions are filed by the minority creditors, and the referee has certified them to the court for review, together with his report of the proceedings had at the meeting. These exceptions may be classified as follows: (1) To the actions of the referee in taking the votes of creditors: (a) On the choice of appraisers; (b) on the manner in which the sale of the assets of the bankrupt should be made, whether in bulk or in parcels; (c) on the choice of an attorney for the trustee. (2) To the rulings of the referee: (a) That the State Savings Bank was entitled to vote upon its claim; (b) that A. D. Bennett, trustee, was entitled to vote; (c) that Alex. Moore was entitled to vote on sundry claims. (3) The appointment of A. C. Pessano as one of the appraisers. The first class may be considered collectively.

1. Section 70, subd. "b," of the bankrupt act of July 1, 1898 (30 Stat. 565 [U. S. Comp. St. 1901, p. 3451]), provides:

"That all real and personal property of bankrupt estates shall be appraised by three disinterested appraisers; they shall be appointed by, and report to, the court."

While there is nothing in the act which in terms prohibits either official from allowing creditors to express their preferences or taking their votes upon the persons proposed for the position, it is a proceeding not to be encouraged. The appointments were made by the referee, and if his appointees possess the proper qualifications his selections are not void by reason of permitting creditors to express their preferences, yet it is far better that he act upon his own unfettered judg-

ment. The act confers the power to choose a trustee primarily on the creditors. As explicitly it empowers the court to appoint the appraisers. The line between the powers of the creditors and those of the referee is clearly drawn. He may, if the creditors fail to do so, appoint a trustee. The creditors cannot, if the referee fails to do so, appoint appraisers. While it is necessary and proper that the referee should inform himself of the competency and disinterestedness of such persons as he may have in mind for appraisers, to permit the creditors to nominate such persons as they may think proper for the positions, is to subject the persons nominated to the suspicion that they are partisans of their supporters, and the referee to criticism that in appointing the nominees of the majority the choice is not his individual judgment, but a concession to numbers. Especially is this true when there is a sharp conflict of views and interests between the factions. The proceedings of the creditors' meeting under review, are not the first manifestations of the existence of cliques among creditors in this cause. In fact the case has been more prolific of heated controversies between those interested in the estate than any other case in bankruptcy—voluntary or involuntary—which has been brought in this district since the passage of the present bankrupt act. These differences seem to be due in part to a misconception of the powers of creditors and of trustees, and to conflicts of interests and judgment in regard to matters, the disposition of which belongs to the court. This first developed at the meeting of January 11th ult., when a majority of the creditors, in the face of the statute and general orders, attempted, by vote, the removal of the trustee chosen at the first meeting and the election of his successor. This action was, of course, held a nullity. Scarcely less illegal are some of the proceedings of the meeting of February 11th ult., which have given rise to these exceptions. The object of section 70b is to secure disinterested appraisers, and the means to that end is that appointment by the referee, because he alone is disinterested. There is great force in what is said by Judge Thomas, in Re Sumner, 4 Am. Bankr. Rep. 123, 101 Fed. 224, in relation to the choice of trustees by the creditors, and its truth has been exemplified in this case:

"Experience in this district under the present act illustrates that the provisions of the statute committing the selection of the trustee to the creditors, permits embarrassments which seriously tend to delay the speedy and proper distribution of the estate. It usually happens that, where there are assets, coteries of creditors are formed for the purpose of controlling the election of a trustee, either in the interest of particular creditors, or for the purpose of carrying to some particular lawyer the emoluments arising from the conduct of the business. As a result, the court has been compelled to appoint a receiver in almost every important proceeding pending the contest over the election of the trustee. Such receiver usually performs a considerable part of the duties that belong to the trustee, and the expense of the administration is largely increased. It is not within the power of the court to withdraw from the creditors their due right to select the trustee, but every effort should be made to put an end to the undue contention, and the consequent delay that accompanies the attempted exercise of that right."

The same view is expressed by Judge Nixon, 14 N. B. R. 152, Fed. Cas. No. 4,058. The like results flow from permitting the majority

of creditors to control the minority, and equally from factious opposition of a minority. The summary of evidence sent up by the referee contains three letters, from which it appears that some, at least, of the majority of creditors are acquiring claims with a view to reorganization and a sale of the property as a whole, and presumably an appraisal is sought which will promote that scheme. On the other hand, it is charged that the minority desire that administration of the estate be prolonged and its property sold in parcels. These are matters which are for determination by the court upon a hearing. The act is equally adverse to any step, measure, or administration which will retard the realization and distribution of assets, or facilitate their acquisition by any part of the creditors at the expense of the rest. It is apparent from the vote that both factions of creditors deem the selection of appraisers a matter of importance, and it may reasonably be inferred that one party is seeking a low appraisal and the other a high one, for ulterior ends. This controversy, and that relative to the question whether the property should be sold in bulk or in parcels, are matters for determination by the court, and not by vote of creditors. The interests of the bankrupt and its creditors should not be impaired or imperiled by these bickerings, which engender discord, delay administration, and cause injury to the interests of all concerned.

2. Equally removed from the interference of the creditors is the action of the trustee, so long as that officer shall act with fidelity to his trust. He is chosen to represent all the creditors—not a majority, however great. In re Lewensohn, 9 Am. Bankr. Rep. 368, 121 Fed. 539, 57 C. C. A. 600. The purpose of vesting the estate of the bankrupt in him is to commit to an impartial administration its management for the benefit of each and all the creditors. The creditors are the cestuis que trustent. He gives a bond for the faithful performance of his duty to all the beneficiaries. His office is one of personal confidence and cannot be delegated. He has no right to impose his duty on others, and if he does he will be responsible to the cestuis que trustent. 1 Perry on Trusts, § 402; Turney v. Carney, 5 Beav. 517; Taylor v. Hopkins, 40 Ill. 442. Subject to the control of the court and statutory limitations, the entire administration of the trust estate is in his hands. He cannot, therefore, yield his judgment to that of a majority of the creditors, merely because they are a majority, without a breach of his trust. To thus abdicate his duties is to make himself a mere passive trustee. It is proper that he should consult with the creditors upon important matters and get the benefit of their knowledge and experience, but the responsibility of decision rests upon him. Finance Co. v. Warren, 82 Fed. 528, 27 C. C. A. 472. The forty-third section of the act of 1867 (14 Stat. 538, c. 176) made provision for superseding the ordinary bankruptcy proceedings by a vote of three-fourths of the creditors and the conveyance to trustees of the estate of the bankrupt to wind up and settle the same under the direction of a committee of the creditors. In Re Jay Cooke & Co., 11 N. B. R. 1–19, Fed. Cas. No. 3,169, this statute was construed as withdrawing control over the settlement

and distribution of the bankrupt's estate from every other power than the creditors' committee, and it was held that in the absence of fraud the direction of such committee to the trustee was conclusive and would not be controlled by any meetings of creditors after their appointment. The present bankruptcy law has no corresponding provision. The strong inference from its absence is that the trustee must discharge his duties according to his best judgment, subject only to the control of the court. He has been held a quasi officer of the court. In re Ryan & Griffin Co., 6 N. B. R. 235, Fed. Cas. No. 12,182; McLean v. Mayo, 7 Am. Bankr. Rep. 115, 113 Fed. 106. "By the clearest implication," says Judge McCormick, "he represents all the creditors, and as such representative has an interest in the just administration of the estate which belongs to the creditors." Atkins v. Wilcox (C. C. A.) 5 Am. Bankr. Rep. 313, 105 Fed. 597, 44 C. C. A. 626, 53 L. R. A. 118; In re Dewey, 4 N. B. R. 412–414, Fed. Cas. No. 3,849.

Judge Lowell said:

"I am unwilling to admit that parties opposed in interest to the official action of assignees should have the power to dictate their conduct even if they happen to be able to command a majority vote of the creditors themselves."

In Re Mallory, 4 N. B. R. 157–159, Fed. Cas. No. 8,990, Judge Hillyer said:

"He [the assignee] has a right to choose his own counsel, and must proceed with his duties according to his best judgment; the court holding him only to a just and reasonable accountability. Should the court undertake to direct him when to proceed in a suit, it would find that it had practically decided questions ex parte which ought to have been decided only on a hearing of both parties interested."

Judge Lowell remarks, in Re Clairmont, 1 N. B. R. 276, Fed. Cas. No. 2,781:

"It is not very obvious that the assignee could do any great injury to a creditor if he were so disposed. His conduct is always open to the supervision of the court."

In Re Baber, 9 Am. Bankr. Rep. 406, 119 Fed. 525, Judge Hammond held it was the duty of the trustee to engage competent counsel, state the facts, and follow his advice. See, also, In re Abram, 4 Am. Bankr. Rep. 575, 103 Fed. 272. The discretion of the trustee extends to the employment of professional and clerical assistance without application to the court. "The court could do but little more than grant such authority," says Judge Longyear, "in general terms leaving the cases in which such assistance should be employed largely to the discretion of the assignee as contingencies shall arise making such assistance necessary. Such authority I think the assignee already possesses under his general powers, subject, however, to the control of the court." In re Noyes, 6 N. B. R. 281, Fed. Cas. No. 10,371. See, also, In re Davenport, 3 N. B. R. 77, Fed. Cas. No. 3,587.

The reasons for these rulings are not far to seek. The administration of the estate by the body of creditors is manifestly impracticable, and against the scheme and policy of the law. The strife

between discordant creditors would imperil realization of the assets, and perhaps waste the estate. The law, therefore, requires the assets of the bankrupt to be entrusted to the management of one or three trustees, selected by the creditors, whom it clothes with ample powers for the execution of the trust, securing their fidelity by proper bonds and by subjecting their management to revision by the court. It exacts from them the same degree of care in their duties which a prudent business man would give to his own affairs (Stanley v. Colt, 5 Wall. 167, 18 L. Ed. 502), and subject to review of his actions by the court—not by creditors—commits to their judgment the administration of the estate. The general rule is that the courts will not remove the trustee except for incompetency or breach of duty, and then only, pursuant to statute, "upon complaint of creditors * * * for cause, upon hearings, and after notice to them." Section 2, subd. 17 (Act July 1, 1898, c. 541, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3421]). He has a right generally to choose his own counsel, and that right will not be controlled unless it is plainly abused. The majority of creditors have no more power to dictate whom he shall employ as counsel than the beneficiaries under a deed of trust or a will have to determine that matter by the vote of the greater number. In the case at bar, there is no ground for criticising his choice. It is equally true that the integrity and ability of the gentleman voted for by the majority of the creditors is unquestioned. No objection exists against either of the counsel, except the fact that each represents creditors. This objection was not made to either. There was, therefore, no reason assigned for the proposed change nor power in the creditors to make it. The vote, therefore, was unauthorized and nugatory, and the referee erred in permitting it to be taken.

But, notwithstanding the trustee's general authority to select his own counsel, this case presents conditions which require its modification. The general rule is opposed to the employment by the trustee of counsel representing interests in the litigation which are either adverse to the estate or in conflict with other interests represented by the trustee, or to which he owes a duty. In re Rusch, 5 Am. Bankr. Rep. 565, 105 Fed. 608. In Re Arnett, 7 Am. Bankr. Rep. 522, 112 Fed. 770, Judge Hammond condemns the action of creditors, or a majority of them, selecting some one or more of their own attorneys as the legal adviser of the trustee, and held that the trustee "should be advised by independent counsel, selected by the court for that purpose, who does not represent any of the creditors."

In Re Mallory, 4 N. B. R. 157, Fed. Cas. No. 8,990, Judge Hillyer held that:

"The assignee's attorney is a minister of the court, and his duty is to the estate, even to the prejudice of his own claim, and it is considered inconsistent with his duties if he acts also as attorney for the bankrupt."

It is equally objectionable, it would seem, for him to attempt to serve the body of the creditors represented by the trustee and his own clients, who have claims against the estate. Ex parte Arrowsmith, 14 Ves. 209. While thus far in the case at bar no conflict between his duty to the trustee and that owing to his clients seems to have

arisen, such a conflict is not unlikely and should be forestalled. The rule which requires the strictest impartiality on the part of a receiver more strongly obtains in the case of a trustee in bankruptcy, and also to his attorney. If a receiver ought not to employ the counsel of any party to the litigation (Beach on Receivers, § 262), it certainly ought not to be permitted to a trustee whose cestuis que trust contest each others' claims and are concerned only for their individual interests. The opinion of Judge Seaman in Re Kelley Dry Goods Co., 4 Am. Bankr. Rep. 528, 102 Fed. 748 is a forcible negation of the propriety of committing even possible adverse interests to the same counsel.

In view of the strained relations between the combinations of creditors in this cause, and in the belief that it will conduce to harmony and promote speedy settlement of the estate, the attorney for the trustee should elect at once whether he will sever his professional relations with the creditors whom he represents or cease to act for the trustee. If he chooses the former, there would seem to be no objection to his continuing as counsel for the trustee. If he elects to act for the creditors, the court will appoint an attorney for the trustee. The conclusions reached on the right of creditors to choose the attorney for the trustee are opposed to the views expressed in Re Smith, 1 Am. Bankr. Rep. 37, and in Re Little River Lumber Co., 3 Am. Bankr. Rep. 682, 101 Fed. 552, but the authority cited in the first for the ruling made fails to sustain it. In the second case Judge Rogers, without discussion of the question, rests his opinion upon the case of In re Smith. The reasons for a contrary view seem to have a stronger support in principle and authority.

2. The second class of exceptions present questions upon the right of the State Savings Bank, A. D. Bennett, and Alex. Moore to vote upon claims. Section 56 (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3442]), provides that:

"Creditors shall pass upon matters submitted to them at their meetings by a majority vote in numbers and amount of claims of all creditors whose claims have been allowed and are present, except as herein otherwise provided."

This, however, confers no authority to submit to creditors the decision of matters which the statute has otherwise made provision for. By section 56b [U. S. Comp. St. 1901, p. 3443] creditors holding claims secured or having priority shall not, as to such claims, be entitled to vote at creditors' meetings, "nor shall such claims be counted in the number of creditors or amount of claims, unless the amounts of such claims exceed the value of such securities or priorities, and then only for such excess." Section 57a declares what shall constitute proof of a claim, and by subdivision "c" claims, after being proved, may, "for the purpose of allowance, be filed. * * *" By subdivision "d" claims "duly proved shall be allowed upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by parties in interest," etc. By subdivision "e" of section 57 "claims of secured creditors and those who have priority may be allowed, to enable such creditors to par-

ticipate in the proceedings at creditors' meetings held prior," etc., "but shall be allowed for such sums only as to the courts seem to be owing over and above the value of their securities or properties." By subdivision "f" "objections to claims shall be heard and determined as the convenience of the court, and the best interests of the estates and claimants will permit." Subdivision "f" supplements section 56b, by providing for the voting valuation of claims which exceed in amount the securities or priorities, and the ascertainment of the excess at meeting held prior to the final determinations of the amount to be credited on the claim as the basis of a dividend, as provided by subdivision "h."

While it is the policy of the present bankrupt act, as it was of that of 1867, that the proceedings should be speeded and all causes of delay and expense removed, section 57f contemplates that an objecting creditor shall have a right to a hearing upon his objection, to examine the claimant and to adduce testimony in opposition to the reception of the claim. In re Sumner, 4 Am. Bankr. Rep. 123, 101 Fed. 224. The creditor whose claim is questioned has an equal right to hearing in support of the prima facie proof required by section 57. Subdivision 6 of general order 21 (89 Fed. x, 32 C. C. A. xxiii) prescribes the method by which the trustee or a creditor may invoke the re-examination of a claim filed, and is broad enough to include any and all claims—secured and unsecured. It is quite as important to the estate and other creditors that the right of a secured or priority creditor to vote upon the excess of his claim over his security or priority should be correctly determined and limited to the proper amount as that the amount of any other claim asserted should be ascertained. Unfortunately for this class of exceptions, neither the trustee nor any creditor has filed a petition for re-examination of the claim of the State Savings Bank or the determination of the value of its security under section 57e. This exception, therefore, must be overruled, without prejudice to the right of the trustee or creditors to take the appointed method for review of the ruling, as it is claimed that the value of the security greatly exceeds that placed upon it by the referee.

"That the referee erred in permitting A. D. Bennett, trustee, to vote upon his claim." The Columbia Iron Works made an assignment for the benefit of creditors July 31, 1903, and was adjudicated bankrupt September 30, 1903. An appeal was taken from the decree, which, however, was affirmed December 19, 1903. In the schedule attached to the common-law assignment, A. D. Bennett, trustee, was listed as a creditor in the sum of $55,000. He has filed a claim against the bankrupt's estate for the sum of $22,500, as trustee and assignee of the Commercial Bank of Port Huron, on six promissory notes, amounting to $55,000 and dated from May 18 to June 9, 1903, inclusive. These notes appear to be secured by collateral purporting a value of $110,000, the same being the assignment of a contract for building a steel steamer. It appears, and it is claimed by the excepting creditors, that Bennett, trustee, or his assignor, has received a preference in the sum of at least $32,500 within four months next

preceding the filing of the petition in bankruptcy in this case. This charge is of a character that would have justified the referee in postponing the claim. The trustee's report, which has been certified here in support of the exceptions of the creditors, apparently makes a prima facie case against the reception of the vote of Mr. Bennett, trustee, and his participation in the meeting until a hearing and determination of the facts. The objecting creditor has a right to examine the claimant and other witnesses. In re Sumner, 4 Am. Bankr. Rep. 123, 101 Fed. 224. The duty of the trustee "to collect and reduce to money the property of the estates for which they are trustees, under the direction of the court, and close up the estate as expeditiously as practicable or is compatible with the best interests of the parties in interest," implies necessarily the protection of the estate from unfounded claims. The trustee should be as vigilant to pursue alleged preferential claims as to collect assets. In re Baird, 7 Am. Bankr. Rep. 448, 112 Fed. 960. If Bennett, trustee, or his assignor, received within the four months $32,500, or any other sum on this original indebtedness of the bankrupt, such payment was a preference, and, unexplained, deprived Bennett, trustee, both from allowance of his claim and the right to participate in creditors' meetings until the surrender of his preference. Swartz v. Fourth National Bank, 8 Am. Bankr. Rep. 673, 117 Fed. 1, 54 C. C. A. 387. This exception should have been sustained so far as to suspend the right of the claimant to vote until the claim could be investigated. In re McGill, 5 Am. Bankr. Rep. 155, 106 Fed. 64, 45 C. C. A. 218; In re Jackson, 14 N. B. R. 449, Fed. Cas. No. 7,123; In re Bartusch, 9 N. B. R. 478, Fed. Cas. No. 1,086. The trustee should take steps to have the ruling reviewed and the transaction probed.

The next exception is to the referee's permitting Alexander Moore to vote upon any claim or take part in the proceedings. Mr. Moore, it is shown by the report of the trustee, holds, with one of the bankrupt's attorneys, the power of attorney of Bennett, trustee, and also several powers of attorney running to himself jointly with another of the bankrupt's attorneys, and this does not appear to be denied. He was disqualified from voting for a trustee upon those claims (In re Wetmore, 16 N. B. R. 514, Fed. Cas. No. 17,466; In re McGill, 5 Am. Bankr. Rep. 155, 106 Fed. 57–62, 45 C. C A. 218), and his vote should have been rejected. If he holds valid assigned claims, in the enumeration of creditors, he should have had but a single vote on all. In re Messengill, 7 Am. Bankr. Rep. 669, 113 Fed. 366; In re Frank, 5 N. B. R. 194, Fed. Cas. No. 5,050. These claims should be investigated under subdivision 6 of general order 21.

3. The only exception remaining for discussion is the appointment of Mr. Pessano as an appraiser. No objection is made to the appointment of Messrs. G. J. Vinton and Edward G. Recor as appraisers. The latter was not voted for, but appointed by the referee on his own motion. It was claimed that Mr. A. C. Pessano, for whom the majority of the creditors voted, is not "disinterested." This objection was overruled by the referee, and Mr. Pessano was appointed. The exception to this appointment is based solely on the facts that Mr.

Pessano is president and manager of the Great Lakes Engineering Company, a corporation engaged in a kindred business to that which the bankrupt had carried on, and that Mr. George H. Russell, who is president of the State Savings Bank—the largest creditor of the bankrupt—is also vice president of the Great Lakes Engineering Company, which has several directors who are also directors of the State Savings Bank. Mr. Pessano's integrity, his competency as an expert shipbuilder, and his knowledge of the values of the shipbuilding plant and materials of the bankrupt, are not questioned. It is not claimed that he has any affiliation with any of the creditors, or that any other fact exists suggesting bias than his interest as a stockholder and president of a corporation of which Mr. Russell is vice president. This would not be per se ground of challenge for cause to Mr. Pessano as a juror in a case to which the State Savings Bank was a party, nor yet in a criminal case. Connors v. United States, 158 U. S. 408, 15 Sup. Ct. 951, 39 L. Ed. 1033. It is not to be presumed that a man of integrity would be deflected from the obligations of his oath by the fact that he has an interest in an investment in which an officer of a corporate creditor of the bankrupt is also a stockholder and an officer. This casual association in an unrelated business venture is too remote to impugn the disinterestedness of Mr Pessano, and the objections to his appointment are overruled. In re Blue Ridge Packing Co., 11 Am. Bankr. Rep. 36, 125 Fed. 619.

It is to be hoped that this disposition of the matters in controversy will compose the jarring elements in the cause and that they will hereafter co-operate to their mutual benefit and advantage in expediting the settlement of the estate. The question of costs is reserved for future action.