VICTOR G. BLOEDE CO. OF BALTIMORE CITY v. JOSEPH BANCROFT & SONS CO.

(Circuit Court, D. Delaware. December 11, 1899.)

No. 4.

1. PRODUCTION OF BOOKS AND PAPERS.

Section 724, Rev. St. U. S., confers authority on the federal courts in civil actions at law to require under pain of judgment of nonsuit or by default production of books and writings, containing evidence pertinent to the issue, not only at the trial, but after the joining of issue and before trial, for inspection in order to prepare for trial.

2. SAME—INSPECTION BEFORE TRIAL.

Even on the assumption that the scope of section 724, Rev. St. U. S., is confined to production only at the trial, quære, whether by virtue of section 914, Id., in conjunction with section 13 of chapter 107 of the Revised Code of Delaware, as amended by the act of April 19, 1895 (20 Del. Laws, p. 187), the court would not be authorized to order production for inspection before trial.

3. CONTRACT—ACTION FOR BREACH—EVIDENCE.

The plaintiff's case includes not only the making and breach of the agreement declared on but the amount of damages, if any, to which the

plaintiff· is entitled, and evidence tending to ascertain such amount is pertinent to the issue.

4. Production of Books and Papers.
Under section 724, Rev. St. U. S., generality in the designation of books or writings is not objectionable if the subject-matter to which they relate is specifically mentioned in the motion and notice.

5. Same.
Discovery by production of documents or otherwise, having for its object the promotion of justice through the disclosure of material facts, will, subject to certain well-recognized exceptions, be awarded in aid of an action at law, unless it clearly appears that a discovery could not avail the case of the party applying for it.

6. Same.
But it will not be awarded to gratify mere curiosity or to enable one party to make undue inquisition into the affairs of another; nor will the court extend discovery beyond the legitimate requirements of the case to be aided thereby.

(Syllabus by the Court.)

Lewis C. Vandegrift and Charles M. Curtis, for plaintiff.
Benjamin Nields, Herbert H. Ward, and William S. Hilles, for defendant.

BRADFORD, District Judge.    Application has been made by motion after due notice for an order requiring the defendant to produce before the trial of this cause for inspection by the plaintiff and its attorneys and agents certain books and writings alleged to be in the possession or under the control of the defendant and to contain evidence pertinent to the issues therein.    The declaration is in assumpsit and contains nine counts.    The defendant has not demurred either specially or generally to the declaration, or any of its counts, but has relied on the pleas of non-assumpsit and the statute of limitations.    On these two pleas the cause is at issue.    The several counts are voluminous and in some instances somewhat complicated. It is unnecessary here to attempt a particular or complete analysis of them.    It, however, appears from the declaration that from time to time during a period prior to June 1, 1893, and extending back of June 9, 1891, pursuant to a parol contract between Victor G. Bloede and the defendant, the former furnished to the defendant and the defendant bought from him certain pulp colors and other colors and materials; that the plaintiff, who had succeeded to the business of Bloede, and the defendant entered into a parol contract on or about June 1, 1893, whereby the defendant for divers considerations set forth in the declaration undertook, among other things, and so long as the plaintiff and defendant should continue mutually agreed on the point, to buy from the plaintiff pulp colors and other colors and materials such as Bloede in and prior to June, 1891, had made and sold to the defendant, as above mentioned; and also, if the defendant should at any time manufacture such colors or materials or have the same manufactured for it by any person or corporation other than the plaintiff, to pay to the plaintiff an amount to be mutually agreed on between them or to be determined by arbitration or a royalty to be similarly determined; and also, if the defendant should cease to buy such colors or materials from the plaintiff, or if the plaintiff

should discontinue its business, to pay to the plaintiff a royalty for the use and manufacture by the defendant of such colors or materials, to be determined and derived as set forth in the declaration, but in any event the royalty to be paid to the plaintiff to be the same as the royalty paid by the defendant to Bloede prior to June, 1891; and the plaintiff in and by said contract undertook, among other things, to furnish to the defendant such full information as would enable the latter to manufacture such colors and materials, in case it should cease to purchase the same from the plaintiff or the latter should for the reasons set forth in the declaration be unable to manufacture the same. It is alleged in the declaration that the plaintiff has fully performed all things on its part necessary to be done to enable it to maintain its action. The breach as assigned in some of the counts is the failure of the defendant to pay royalty as stipulated, and, as assigned in others, the refusal by the defendant to submit to arbitration touching royalty claimed. The damages are laid in the sum of $150,000.

The defendant contends that the present application should for several reasons be denied. It is urged that the court has no power to order that books or writings be produced before trial in an action at law. Section 724 of the revised statutes which is a reproduction in substance and almost in terms of section 15 of the judiciary act of September 24, 1789, is as follows:

"Sec. 724. In the trial of actions at law, the courts of the United States may, on motion and due notice thereof, require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery. If a plaintiff fails to comply with such order, the court may, on motion, give the like judgment for the defendant as in cases of nonsuit; and if a defendant fails to comply with such order the court may, on motion, give judgment against him by default."

There has been much contrariety of judicial opinion on the question whether this section authorizes an order for the production before trial of books or writings. Its phraseology is unfortunate and calculated to shroud its meaning in doubt. It is, however, remarkable in view of the antiquity of the law and of the number of cases which have arisen requiring its construction that its intent on the point under discussion is still the subject of controversy. The weight of authority throughout the country taken as a whole as well as of reason appears to support the proposition that the section confers authority on the federal courts in civil actions at law to order in proper cases production of books and writings containing pertinent evidence, not only at the trial, but after the joining of issue and before trial for inspection in order to prepare for trial. In Geyger's Lessee v. Geyger, 2 Dall. 332, Fed. Cas. No. 5,375, where the original section was under consideration, the circuit court for the district of Pennsylvania in 1795 broadly declared the purpose of the law as follows:

"The provision contained in the judicial act was intended to prevent the necessity of instituting suits in equity, merely to obtain from an adverse party, the production of deeds and papers relative to the litigated issue."

In Bank v. Tayloe, 2 Cranch, C. C. 427, Fed. Cas. No. 2,548, decided by the circuit court for the District of Columbia in 1823, there was a motion for production before trial. Geyger's Lessee v. Geyger was cited in opposition. The court, however, ordered the defendant to produce his bank-book and vouchers prior to the trial "for the inspection of the plaintiff's counsel, in the presence of the defendant's counsel, if he wished to be present." In Jacques v. Collins, 2 Blatchf. 23, Fed. Cas. No. 7,167, the circuit court for the southern district of New York in 1846 granted an application that certain correspondence and documents be produced before trial for inspection or that service be made before trial of verified copies of the same to enable the defendants to prepare for trial. In Finch v. Rikeman, 2 Blatchf. 301, Fed. Cas. No. 4,788, decided by the same court in 1851, there was a motion for production before trial of books of account and for leave to take copies. The motion was denied, not because the application was for production before trial, but for the reason that the direct consequence of granting it would or might be to subject the defendants to a penalty. Judge Betts in delivering the opinion of the court said:

"It is plain, from the language of this statute, that Congress did not intend to vest in parties litigant an unrestricted right to all written evidence in the possession of an adverse party, which might be pertinent to an issue in a trial at law; the qualification being explicit, that the right is allowable only in cases and under circumstances in which the Court of Chancery, by the ordinary rules of proceeding in that Court, would compel the production of books and documents. * * * The plain limitation to the right to the interposition of this Court by giving final judgment, is, that the application by a party for the production of papers be one which a court of equity would sustain on a bill of discovery. The right, in our opinion, rests entirely on that condition. * * * We think it against the rules of Equity, to allow a bill of discovery in such a case, unless the bill relinquishes all claim to the penalty which may be superinduced by the production and exhibition of the books, and, for that cause, the motion must be denied."

U. S. v. Youngs, 10 Ben. 264, Fed. Cas. No. 16,783, was an action in the district court for the southern district of New York to recover duties alleged to be due to the United States on sugars imported by the defendants. There was a motion to compel the production by the plaintiff of the official weighers' returns of the weight of the sugar in order that the defendants might have inspection or take copies of such returns to enable them to prepare for trial. The right to discovery was claimed not only under the act of Congress but under a section of the New York code. The case, however, was decided on section 724 of the revised statutes. The court after referring to authorities granted the motion. Judge Choate in the course of the opinion said:

"The reference in the statute to proceedings in chancery, evidently meaning by bill of discovery, is not used as limiting or designating the parties against whom the power of the statute may be invoked. It appears merely to and is used to define the cases and circumstances under which the power will be exercised, that is to say, the evidence must be of that kind which can be compelled by a bill of discovery and the circumstances necessary to be shown upon a bill of discovery as to the relevancy of the evidence and the necessity for its production, etc., must be shown to compel its production on motion."

In U. S. v. Hutton, 10 Ben. 268, Fed. Cas. No. 15,433, where it was held that section 724 gives no remedy until issue has been joined, the same court said:

"The right of one party in a suit to demand an inspection or copies of books and papers in the possession of the other, either for the purpose of preparing a pleading or of preparing for trial, has long been recognized as a right which the courts should, in some form and under proper circumstances, enforce. Independently of statutory provisions, the right has generally been enforced by bringing a bill of discovery in chancery for the purpose. But to avoid the delay and expense of such a proceeding, statutes have been passed, both state and federal, substituting, for the bill of discovery, a proceeding in the action itself, by way of motion and order. The production of books and papers is, so far as the federal courts are concerned, regulated by Rev. St. § 724. * * * But this statute seems clearly to limit the remedy to cases in which issue is joined, one test of the statute to the right to a production of the books and papers being that they contain evidence 'pertinent to the issue.' "

In Easton v. Hodges, 7 Biss. 324, Fed. Cas. No. 4,258, in the circuit court for the eastern district of Wisconsin, Judge Dyer referred, without any suggestion of doubt as to their validity, to the rules of that court as providing methods for obtaining in actions at law inspection of books and documents and copies thereof. In fact the rules of that court then regulated and now regulate the manner of securing production before trial of books and writings under section 724.

In Coit v. Amalgamating Co. (C. C.) 9 Fed. 577, which was a suit in equity in the circuit court for the eastern district of Pennsylvania, there was a motion for a rule on the defendant to show cause why he should not produce certain books and papers. Judge Butler, while not deciding the point now presented, evidently entertained no doubt that under section 724 production before trial could properly be ordered. He said:

"The practice in equity formerly was to obtain information and use of the contents of books and documents in a party's possession, by bill of discovery, requiring the respondent to set out the contents at large in the answer; as this was found to be laborious, expensive, and tending to encumber the records unnecessarily, it was so changed as to require simply an acknowledgment of the existence and possession of the documents, and upon such acknowledgment to obtain their production by motion. Where such information and use were needed in trials at law, the practice was the same, until the more convenient one, provided by statute, was adopted,—wherein an affidavit designating the books or documents, and averring the materiality of their contents, is substituted for the bill, and the absence of a counter affidavit is treated as acquiescence in what is stated. All the purposes of a formal bill are thus effected without any of the cost, labor, and delay of the former practice. There is no good reason why this more convenient and expeditious method should not be applied in equity to cases such as that now before the court. * * * There certainly ought not to be any greater degree of difficulty, or circumlocution, in obtaining an exhibition of such relevant and material matter in suits in equity than at law. In each equal care is required, and should be observed by the court, to avoid unnecessary exposure of a party's private affairs, or improper prying into his case,—by limiting the order for production and examination, to what is shown to be important to the mover's case."

In Gregory v. Railroad Co. (C. C.) 10 Fed. 529, a motion for production before trial of books, papers and vouchers was granted by the circuit court for the northern district of Iowa. Judge Love, after quoting section 724, said:

"From this provision it is clear that the plaintiff's motion cannot be denied. But how, when, and where the books, etc., shall be produced must be determined by the sound and just discretion of the court. * * * The right of a litigating party is to inspect, to examine, and take copies, with view of securing information, and offering their contents in evidence. This right the law secures

to him, and the court will order it to be done in such a way as to prejudice as little as possible the owners of the books. * * * It will be seen by examining the foregoing provision, that the court is to govern its discretion by the practice in such cases in chancery. The practice in equity has been long established, and the court will make an order in strict pursuance of that practice."

In Paine v. Warren (C. C.) 33 Fed. 357, where a bill of discovery was filed, it appeared that the complainant had commenced an action in the state court which, before any pleadings were filed, was removed to the circuit court for the southern district of New York. After removal a motion was made in the circuit court to compel the defendant to allow inspection of his books to enable the plaintiff to frame his complaint. This motion was denied as issue had not been joined. Judge Wallace in delivering the opinion of the court in the suit for discovery said:

"The motion to compel production was denied, as it should have been, for the reasons thus stated, and the plaintiff has now filed a bill of discovery on the equity side of the court in aid of his suit at law. If the original suit is at law, this practice is authorized. * * * No pleadings have yet been filed in the first action, and it is therefore impossible to determine by the usual method whether the suit is on the law side or the equity side of the court. But the cause of action set forth in the bill of discovery is one cognizable at law. It is probably true that it is one of which equity also has concurrent jurisdiction, because the remedy there would be more adequate and complete in some respects than the plaintiff can obtain at law. * * * The plaintiff has the choice at his election of either one of two courses which will afford him an efficient remedy. He can dismiss his bill of discovery and treat his original suit as an action at law, and when the pleadings are perfected and issue joined, can apply to compel an inspection and production of necessary and material books and papers in the defendant's possession; or he can treat it as a suit in equity, and frame a bill with appropriate averments and interrogatories for discovery, and move, if necessary, for an inspection according to the course of equity practice."

In Brewster & Co. v. Tuthill Spring Co. (C. C.) 34 Fed. 769, a bill in equity was filed in the circuit court for the northern district of Illinois to compel specific performance of an agreement which, among other things, provided that the complainant or his authorized agent should have the right to inspect the books of certain licensees under a patent and to make copies thereof. The bill prayed, among other things, that the defendants be compelled to allow the complainant's agents to inspect their books containing certain accounts and to take copies. The first ground of defense was that the court had no jurisdiction because the complainant had a plain, adequate and complete remedy at law. Judge Blodgett in delivering the opinion of the court said:

"As to the first point made, that complainant has an adequate remedy at law, I can see no reason why the complainant in an action at law cannot recover all the damages for the breach of this contract that could be awarded by a court of equity, and could have action for successive breaches of the same; and by section 724 of the revised statutes complainant can compel the production of defendants' books to the same ex nt that this court can do sitting as a court of equity."

In Exchange Nat. Bank of Atchison v. Washita Cattle Co. (C. C.) 61 Fed. 190, the circuit court for the eastern district of Missouri held that the power conferred by section 724 to order the production of

books and writings includes the power to grant inspection of them with permission to make copies before trial.   Judge Thayer in that case said:

"This is a motion by the plaintiff to obtain an inspection of the defendant's books and permission to take copies of entries therein, the case being now at issue.   The jurisdiction to make such an order must be derived from section 724, Rev. St. U. S., as the state statute is not applicable.   Gregory v. Railroad Co. (C. C.) 10 Fed. 529.   The statute (section 724) says nothing about an order for the inspection of papers and permission to take copies of entries, etc., but it must be presumed that the purpose of compelling a party to produce his books is to enable the opposite party to examine them, and, if necessary, to make copies of entries.   Therefore it is reasonable to hold, and the court so decides, that the power to order the production of books includes the power to grant an inspection."

In Lucker v. Assurance Co. (C. C.) 67 Fed. 18, where it was held by the circuit court for the district of South Carolina that the right given by section 724 is not limited to production only at the trial, but extends to inspection with permission to copy before trial, Judge Simonton said:

"It seems, however, to be a narrow construction of section 724 to limit its operation to the actual trial.   Its purpose, clearly, is to provide a substitute for a bill of discovery, and to secure at law the purposes which such a bill would subserve.   All the cases recognize this.   On a bill for discovery, necessarily, the facts sought would be discovered before trial.   Besides this, the section says that this order for the production of papers can be made 'in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery.'   *   *   *   There is another point of view of this matter.   The object of a motion of this character is to enable a party, in advance of the submission of the issue, to ascertain the strength or weakness of his case.   An inspection of the papers may end the case.   It is better to reach this result in this short way than in the middle of a trial."

In Henszey v. Mining Co. (C. C.) 80 Fed. 178, Judge Simonton in the circuit court for the eastern district of North Carolina granted a motion for leave to examine certain mines touching which a charge of mismanagement by a receiver had been made.   He said:

"The motion appears to me to be analogous to the motion made for the production, by parties, of books or writings in their possession, which contain evidence pertinent to the issue (Rev. St. U. S. § 724), and to the motions under the code practice for admission or inspection of writings or examination of the parties, before trial."

The cases adopting the narrower construction of section 724 are fewer and less satisfactory in their reasoning than those holding that production can be compelled before trial.   In Hylton's Lessee v. Brown, 1 Wash. C. C. 298, Fed. Cas. No. 6,981, decided in 1806 by the circuit court for the district of Pennsylvania, notice had been given by the defendant to plaintiff's counsel to produce at the trial a certain will.   Before the jury was impaneled the defendant read the notice and also an affidavit to show that the will was in the possession of the plaintiff.   The objection of counsel and the action of the court are stated as follows:

"It was objected, by the plaintiff's counsel, that the motion was premature, and should be made during the trial; because, the act of Congress says, that the courts shall have power, in the trial of actions at law, on motion, and notice, to order papers to be produced, which contain evidence pertinent to the issue; so that the court, until the trial is gone into, cannot know whether it

is pertinent or not; and the order is to be made on the trial. The court overruled the motion."

Mr. Justice Washington, however, in speaking of the scope of the provision now embodied in section 724, said:

"The remedy provided by the act of Congress, is merely cumulative; and, to save the time and expense of a bill of discovery, it enables this court to do, in a summary way, what they might do, if a bill of discovery were filed on the equity side of the court, and no more."

So in Triplett v. Bank, 3 Cranch, C. C. 646, Fed. Cas. No. 14,178, decided in 1829 by the circuit court for the District of Columbia, notice had been given by the plaintiffs to the defendant to produce at the trial certain letter books of the latter. The plaintiffs' counsel claimed that he had a right to examine them before the trial to ascertain whether they contained matter pertinent to the issue, and moved the court for an order requiring the defendant to produce the books. The action and opinion of the court appear in the report as follows:

"The court refused to make the order; not being satisfied that the books contained any matter pertinent to the issue, (no particular letter being designated,) and not being of opinion that the plaintiff has a right to inspect the books for the purpose of ascertaining whether they contained any such matter."

In Iasigi v. Brown, 1 Curt. 401, Fed. Cas. No. 6,993, decided in 1853, Mr. Justice Curtis, in delivering the opinion of the circuit court for the district of Massachusetts, said:

"By the common law, a notice to produce a paper, merely enables the party to give parol evidence of its contents, if it be not produced. Its non-production has no other legal consequence. This act of Congress has attached to the non-production of a paper, ordered to be produced at the trial, the penalty of a nonsuit or default. This is the whole extent of the law. It does not enable parties to compel the production of papers before trial, but only at the trial, by making such a case, and obtaining such an order as the act contemplates. * * * The application for such an order may be made, on notice, before trial. There is a manifest convenience in allowing this. But, at the same time, I think the court should not decide finally on the materiality of the paper, except during the trial; because it would occupy time unnecessarily, and it might be very difficult to decide beforehand, whether a paper was pertinent to the issue, and whether it was so connected with the case, that a court of equity would compel its production. These points could ordinarily be decided without difficulty during a trial, after the nature of the case, and the posture and bearings of the evidence are seen."

No reason is perceived why a court of law after issue joined in an action pending therein should have greater difficulty in determining the pertinency of evidence contained in documents of which production before trial is sought than a court of equity in deciding on the propriety of compelling discovery or production of similar documents for inspection before trial in aid of the plaintiff's or defendant's case in an action at law. To adopt the narrower construction of section 724 on the ground that a court of law cannot well ascertain after issue joined but before trial the pertinency of the contents of books or writings would practically involve condemnation of the long established and beneficial practice in chancery of awarding discovery or production of documents in aid of an action at law. In Merchants' Nat. Bank v. State Nat. Bank, 3 Cliff. 201, Fed. Cas. No. 9,448, decided in 1868, Mr. Justice Clifford, in delivering the opinion of the

circuit court for the district of Massachusetts, said, with reference to the granting of motions for production under section 15 of the judiciary act:

"Undoubtedly the power conferred is a discretionary power, but it is one which should be firmly exercised in a case falling within the conditions specified in the provision, when it appears that there is just ground to apprehend that delay will defeat the action of the court, and that the party is unable to obtain the evidence by subpœna duces tecum, and that the case and circumstances are such that notice to produce is not a safe and adequate remedy. * * * No doubt is entertained that the motion may be made, in a pending action at law, before the day of trial; but the requirement of the order of the court must perhaps be that the books and writings be produced at the trial of the action. Such an order may be absolute or nisi, as the circumstances may justify or require. Production before the trial is not perhaps contemplated by the words of the provision, nor is it in general necessary. * * * Where the motion is accompanied by satisfactory proof that the case is one in all respects within the conditions of the provision, and it is also satisfactorily shown that there is just ground to apprehend that the books and writings may be destroyed or transferred to another, or removed out of the jurisdiction before the day of trial, the order should be made without delay, and be absolute."

It is evident that Mr. Justice Clifford was unprepared or unwilling to assume without qualification the position theretofore taken in the same court by Mr. Justice Curtis in Iasigi v. Brown, or unnecessarily to assail that position. There has been and probably is some difference of opinion as to the precise view entertained by the former on the question whether production before trial can be ordered under the statute. In Massachusetts it has been considered that the views of Mr. Justice Clifford and Mr. Justice Curtis on that point conflict with each other. In Caspary v. Carter (C. C.) 84 Fed. 416, Judge Putnam in the circuit court for the district of Massachusetts, after referring to Iasigi v. Brown and Merchants' Nat. Bank v. State Nat. Bank, said:

"The practice under this statute seems very unsettled, even to the extent that decisions in this circuit are not consistent. We are not required, under the circumstances, to determine whether production can be compelled before trial; but Mr. Justice Curtis and Mr. Justice Clifford apparently differed on this point, as shown by the cases cited."

In Caspary v. Carter the application was for production before trial and was refused, not on the ground that the court was without authority to order such production, but because the pertinency and materiality of the contents of the books and documents of which production was desired did not sufficiently appear. In U. S. v. National Lead Co. (C. C.) 75 Fed. 94, in the circuit court for the district of New Jersey, there was an application by the plaintiff for leave under the supervision of the court to examine before trial certain books of the defendant. The application was refused on two grounds: first, that section 724 does not authorize an order for production before trial, and, secondly, that the production of the books might expose the defendant to a penalty or forfeiture. Judge Green, in discussing the first ground, said:

"The application is that the court should require the defendant to produce now, immediately, before trial, certain books alleged to contain matters pertinent to the issue, that they may be examined by the plaintiff for the very purpose of preparing its cause for trial. But by the very words of the statute the exercise of the power vested in federal courts to require production of such

books or writings is limited to causing such production to be made at the trial. The words are not, broadly, 'in any action at law at any time' the court may require the production of books, but there is an express limitation found in the words 'on the trial of any action.' It is, then, at that particular time—at the trial, and at no other time—that the court may, in its discretion, order books to be produced. * * * The words of the statute are so clear that no construction other than this obvious one could be made. It is at the trial that books and documents are to be produced, not at any other time."

Judge Green in support of his position referred to Iasigi v. Brown and Triplett v. Bank, and stated that many other cases could be cited to the same effect. Diligent search has failed to disclose any authorities favorable to the conclusion reached by the learned judge on the point now under discussion other than those already mentioned. Two observations justly may be made touching the case of U. S. v. National Lead Co. There was an evident misconception of the language of the statute, the words "on the trial of any action" being erroneously substituted for the words "in the trial of actions at law" —phrases not necessarily equivalent, even when considered alone. Further, it seems to have been assumed without sufficient warrant that the words of the section were so clear as obviously to exclude any other construction than that adopted. But this certainly is not the case. If its provisions be strictly construed according to its language it seems well-nigh impossible to reach any satisfactory or definite conclusion as to its meaning. The statute, however, is remedial and as such entitled to a liberal construction. It provides for production of books or writings "in cases and under circumstances" where the parties "might be compelled to produce the same by the ordinary rules of proceeding in chancery." A proper case must, of course, exist. The books or writings must contain pertinent evidence and the party applying for their production must have an interest in that evidence as tending to support his case as plaintiff or defendant. It is, and was at and prior to the time of the passage of the judiciary act, within the settled jurisdiction of chancery and a usual practice to order production before trial of an action at law of documents containing pertinent evidence for inspection by a party having the requisite interest therein and desiring to use the same in preparing himself for trial. It must be assumed that Congress in passing the judiciary act was aware that the "circumstances" under which production might be compelled in chancery embraced cases where the purpose of the party applying was to inspect, examine and take copies of the books or writings before the trial of an action at law in order to prepare for such trial. It is reasonable, then, to conclude that the statute authorizes the court in actions at law to order production for inspection, after issue joined, in all cases and under all circumstances where it might have been ordered in chancery in aid of parties to such actions, and that this court sitting as a court of law can in such actions under pain of nonsuit or default enforce the production of books or writings to the same extent and for the same purposes as when sitting as a court of equity and compelling production in aid of such actions. Unless the terms "in cases and under circumstances where they might be compelled to produce the same by the ordinary rules

of proceeding in chancery" are to be wrested from their natural meaning, it is difficult to perceive that production before trial is not equally with production at the trial within the scope of the provision. There is no sufficient warrant for an assumption that Congress intended that production of books and writings for inspection should be had only at the trial. Such a practice would in many instances be inconvenient, dilatory and expensive, with nothing to justify it, leading to postponements to allow time for inspection and calculated to embarrass or defeat the due administration of justice. It is obviously proper that an examination of books and writings extending over a period perhaps of weeks or months should be concluded before the commencement of the trial. If the section receives the liberality of construction to which its character as a remedial statute entitles it, it is broad enough to include not only production at the trial but production for inspection before trial. I am, however, by no means satisfied that this court would not be authorized in an action at law to order production of books or writings before trial, even were the scope of section 724 confined to production solely at the trial. Section 13 of chapter 107 of the revised code of Delaware, as amended by the act of April 19, 1895 (20 Del. Laws, p. 187), provides for production before as well as at the trial of actions at law. On the assumption that production before trial is not within the scope of section 724, congress has in purely affirmative words conferred on the courts of the United States power in actions at law to compel under pain of nonsuit or default production at the trial. Neither that section nor any other enactment provides that the power of compelling production shall not extend to production before trial. If such power does not exist under section 724, it is not by reason of any prohibition therein contained but simply because it has not thereby been granted. If it has not been so granted, if congress has not directly dealt with the subject of production before trial, it is difficult on principle to perceive why this court should not by virtue of section 914 of the revised statutes follow the state practice as embodied in the state statute referred to in so far as it relates to production before trial. The production of books and writings for inspection before trial as compared with their submission to a jury by way of proof is a matter of practice in contradistinction to a matter of evidence. Ex parte Fisk, 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117, is clearly distinguishable. That case discloses an express statutory limitation of the mode of proof in actions at common law in the federal courts, subject to certain specified exceptions, and decides that "every action at law in a court of the United States must be governed by the rule, or by the exceptions which the statute provides." It is undoubtedly true that in many cases congressional legislation with respect to a given subject may, even without words of exclusion, properly be held to furnish the sole rule applicable to it. But here, while congress, on the narrower construction of section 724, has in affirmative terms conferred power on the federal courts in actions at law to order production at the trial, the statute apparently contains nothing expressly or impliedly excluding the operation of section 914 with respect to state practice, statutory or otherwise, au-

thorizing an order for production before trial. It does not follow from the fact that means have been provided whereby books or writings may be required to be produced at the trial that congress intended that they should not under any circumstances be required by the court to be produced before trial. Certainly there is no conflict or inconsistency between a law authorizing an order for production before trial and a law in purely affirmative terms authorizing an order for production at the trial. Such provisions in the absence of a prohibition, expressed or plainly implied, are essentially consistent with and supplementary to each other. In view of the foregoing considerations and of the long established and beneficial practice in courts of equity of compelling discovery by the production of documents before the hearing or a trial at law, as the case might be, it is inadmissible to assume that congress recognized that securing a discovery from the plaintiff or defendant by the production of books and writings or otherwise in an action at law prior to the trial was either inherently improper or inconsistent with the due administration of justice. In Chappell v. U. S., 160 U. S. 499, 512, 16 Sup. Ct. 397, 401, 40 L. Ed. 510, the court, speaking of section 2 of the act of congress of August 1, 1888 (25 Stat. 357), relating to condemnation of land for public buildings, said:

"The direction, in the act of Congress, that the practice, pleadings, forms and modes of proceeding, in cases arising under it, 'shall conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State,' must, as was said by this court in an analogous case, following the decisions under the corresponding provision of section 914 of the revised statutes, 'give way, whenever to adopt the state practice would be inconsistent with the terms, defeat the purpose, or impair the effect, of any legislation of Congress.'"

Here, on the assumption that section 724 authorizes production only at the trial, the adoption of the state practice as to production before trial would not in any manner or in the least degree be inconsistent with the terms, defeat the purpose, or impair the effect of that section. No reason is perceived why, on the narrower construction of the section, such state practice should not be adopted for the advancement of justice. But, as the section properly construed contemplates production before as well as at the trial it must, to the exclusion of the state statute and section 914, be held the exclusive source of authority on the part of this court in actions at law to order production.

The books and writings of which production is sought are described in the motion and notice and accompanying affidavit as follows:

"All books, papers, writings, accounts, day books, blotters, journals, ledgers, cash books, letter books, order books, shipping bill books, invoices of goods bought or received, of the defendant in the possession of the company, its officers, servants, or agents, kept, made or received by the company, its officers, servants or agents in the business of said company, from January 1st, 1893, to June 9th, 1897, showing:

"(1) What coloring materials, goods, wares and merchandise, pulp colors and other colors and materials were manufactured by the plaintiff for and delivered to the defendant from June 1st, 1893, to January 1st, 1895;

"(2) Showing what coloring materials, pulp colors and other colors and dye materials were manufactured by said defendant from June 1st, 1893, to June 9th, 1897;

"(3) Showing what coloring materials, pulp colors and other colors and dye materials were manufactured for said defendant by any other person, corporation or association other than the plaintiff from June 1st, 1893, to June 9th, 1897;

"(4) And showing what coloring materials, pulp colors and other colors and dye materials were used by the defendant from June 1st, 1893, to June 9th, 1897."

Victor G. Bloede, president of the plaintiff, in the affidavit accompanying the motion and in a supplementary affidavit subsequently filed, states in substance that the plaintiff has a just and true cause of action against the defendant as the same is set forth in the pleadings in this case and as he verily believes is justly and truly entitled to recover therein from the defendant; that the above mentioned books and writings are in the possession or control of the defendant within the district of Delaware and contain evidence pertinent to the issue; that they will show that large quantities of goods, pulp colors, dye materials and coloring materials were manufactured by the plaintiff for and delivered to the defendant from June 1, 1893, to January 1, 1895, and also that large quantities of such goods, colors and dye and coloring materials were manufactured and used by the defendant and were manufactured for the defendant by a person or persons other than the plaintiff between June 1, 1893, and June 9, 1897; that a more particular description of the books and writings cannot be given by the plaintiff; that the plaintiff through its attorney has requested of the defendant an opportunity to inspect such books and writings and to take copies and make abstracts thereof, but such request has been refused by the defendant; that it is necessary in the preparation of the case for trial that the plaintiff, its attorneys or agents, should have such inspection with liberty to take copies and make abstracts; and that inspection and perusal of such books and writings only at the trial would be of no benefit to the plaintiff in the preparation of its case, the books and writings being voluminous, numerous and unfamiliar to the plaintiff, its officers, attorneys or agents.   In opposition to the motion for production the defendant presented the affidavit of Samuel Bancroft, Jr., its president, in which he states:

"That said defendant has in its possession or control certain books, papers, writings, accounts, day books, blotters, journals, ledgers, cash books, letter books, order books, shipping bill books, invoices of goods bought or received and that said books, papers, writings, invoices, and accounts cover the period from January 1, 1893, to June 9, 1897, and that the entries in said books, papers, writings, invoices, and accounts relate solely to the business of the defendant, and to the case of the defendant, and not to the case of the plaintiff, nor do they tend to support it, and they do not, to the best of the deponent's knowledge, information and belief contain anything impeaching the case of the defendant, wherefore the defendant objects to produce the same and says, they are privileged from production."

This affidavit does not fully and fairly meet the allegations in the affidavit supporting the motion. It does not contradict the statement in the supporting affidavit of what the books and writings of the defendant will show. It does not directly deny any of the material averments of fact in that affidavit. It contains at best only an argumentative denial of them and alleges supposed conclusions

of law. Such a statement, if contained in an answer to a bill of discovery, clearly would be insufficient. There is equal, if not stronger, reason for holding it insufficient here. It is objected by the defendant that the cause of action as alleged is the breach of an agreement and that the books and papers of which production is sought are not claimed to contain evidence tending to establish such agreement. This objection proceeds on the assumption that evidence to be pertinent to the issue in this case within the meaning of the statute must relate to the contract set up, and not merely to the quantum of damages recoverable by reason of its breach. But the plaintiff's case includes not only the making and breach of the agreement but the amount of damages, if any, to which it is entitled, and evidence tending to ascertain such amount is pertinent to the issue. Chancery has power to compel discovery by production of documents or otherwise to enable a plaintiff in an action at law to prove his damages. It is further objected by the defendant that there is a fatal lack of particularity in the description of the books and writings of which production is sought. But this objection cannot be sustained. Even were the question here whether such generality of description would be fatal in the case of a mere notice to produce, authority would not be wanting tending to show its sufficiency. In Vasse v. Mifflin, 4 Wash. C. C. 519, Fed. Cas. No. 16,895, it was held that a notice to the defendant to produce "all letters, papers and books in his possession, relating to moneys received by him under the award of the commissioners acting under the Florida treaty," was sufficiently specific, "the letters called for being described by their subject-matter, which the plaintiff might not have had the means of describing by their dates." But the question in this connection does not relate to the laying of sufficient ground for the introduction of secondary evidence of the contents o_ books or writings. It is whether a proper case has been made for an order under section 724 for the production of the books and writings themselves. The plaintiff from the nature of the case, in the absence of information, and as stated in the supporting affidavit, has not the ability to describe with particularity the books or writings containing evidence pertinent to the issue and referred to in that affidavit. The defendant, however, can without difficulty ascertain and produce the books and writings containing such evidence. To require the plaintiff specifically to point out the books or writings would be to demand of him an impossibility. To require the defendant to collect such books or writings can involve no hardship. If the court make an order that a defendant produce all books and writings containing entries in relation to a given subject-matter and he fails to comply with such order, "the court may, on motion, give judgment against him by default." A discretionary power is thus conferred on the court, not for the punishment of innocent omission, but for the advancement of justice. Failure by a defendant to comply with such an order does not necessarily result in a judgment by default. While willful non-compliance would have that effect, an innocent omission after the exercise of due diligence would not be so visited. But the court will rigidly exact, under pain of a nonsuit or default, from a

party required to produce books or writings the observance of the utmost good faith in the manner and extent of compliance. No reason, therefore, is perceived why under section 724 generality in the designation of books or writings is objectionable if the subject-matter to which they relate is specifically mentioned in the motion and notice. Under a closely analogous provision of law Judge Dyer in U. S. v. Three Tons of Coal, 6 Biss. 379, Fed. Cas. No. 16,515, and Judge Gresham in U. S. v. Distillery No. 28, 6 Biss. 483, Fed. Cas. No. 14,966, held that descriptions of books and writings in motions for their production quite as general as that given in this case were sufficient. Discovery by production of documents or otherwise having for its object the promotion of justice through the disclosure of material facts, it has become a fundamental principle that, subject to certain well recognized exceptions not applicable to this case, it will be awarded by chancery in aid of an action at law, unless it clearly appears that a discovery could not avail the case of the party applying for it. Mitf. Eq. Pl. *193; 1 Daniell, Ch. Prac. *637; 2 Story, Eq. Jur. §§ 1483, 1493a; Story, Eq. Pl. §§ 562, 567. But it will not be awarded to gratify mere curiosity or to enable one party to make undue inquisition into the affairs of another. Nor will the court extend discovery beyond the legitimate requirements of the case to be aided thereby. So, under section 724 production of books or writings is authorized only so far as they contain evidence pertinent to the issue. An exposure of business details and secrets, not pertinent to the issue, to enable one to discover clues to guide him in conducting an investigation of possible claims or defences against an adversary is not to be tolerated. Under existing circumstances the plaintiff is entitled to inspection before trial. The pleadings, however, do not warrant the granting of the motion without qualification. It is too broad. To meet the case as presented an order will be made that the defendant produce in this court on Monday, March 5, 1900, at 11 o'clock a. m. for inspection by the plaintiff, its agents or attorneys, and with leave to the plaintiff, its agents or attorneys, to take copies and make abstracts, under the further order and direction of the court, all books and writings in the possession or power of the defendant showing all or any of the following particulars: (1) what pulp colors and other colors and materials were manufactured by the plaintiff for and delivered to the defendant between June 1, 1893, and January 1, 1895; (2) what pulp colors and other colors and materials were manufactured by the defendant between June 1, 1893, and June 9, 1897, similar or substantially similar to the pulp colors or other colors or materials furnished by Victor G. Bloede to the defendant on or prior to June 9, 1891; (3) what pulp colors and other colors and materials were manufactured for the defendant otherwise than by the plaintiff between June 1, 1893, and June 9, 1897, similar or substantially similar to the pulp colors or other colors or materials furnished by Bloede to the defendant as above mentioned; and (4) what pulp colors and other colors and materials were used by the defendant between June 1, 1893, and June 9, 1897, similar or substantially similar to the pulp colors or other colors or materials furnished by Bloede to the defendant as above mentioned. Let an order be prepared accordingly.