---

## In re DEWS.

(District Court, D. Rhode Island. January 12, 1900.)

BANKRUPTCY—OPPOSITION TO DISCHARGE—FALSE OATH.

Where a bankrupt, on a hearing on his application for discharge, produces to the court a written account, called a "Statement of Expenditures," which purports to show in detail the disposition made of a sum of money which he is charged with having secreted, and testifies to its truth, but such statement is in fact false and inaccurate, if the inaccuracies are the result of an intentional and fraudulent manipulation of figures, for the purpose of making a showing favorable to the bankrupt, and not the consequence of an honest mistake, he is guilty of making a "false oath and account in a proceeding in bankruptcy," within the meaning of Bankr. Act 1898, § 29b, subd. 2, and his discharge must be refused.

In Bankruptcy. On application of bankrupt for discharge, and opposition thereto by creditors.

H. E. Bolles, for objecting creditor.
Lorin M. Cook and S. W. K. Allen, for bankrupt.

BROWN, District Judge. The Washington National Bank, a creditor, opposes the discharge of the bankrupt on the following grounds: (1) Because the bankrupt has made a false oath and a false account in and in relation to a proceeding in the matter of his bankruptcy; said proceeding being a hearing before this court upon the petition of said bankrupt for his discharge and the objections of said creditor thereto. (2) Because said bankrupt at said hearing made to and presented to said court in writing as a part of his evidence in said proceeding a false account, entitled "Statement of Expenditures," which account purported to show the way in which said bankrupt had spent $125,-242.98, withdrawn by him from the Phœnix Woolen Company, a corporation. (3) Because said bankrupt in said proceeding made a false oath and testified falsely to said court in substance that said account substantially showed the manner in which said sum withdrawn by him from said Phœnix Woolen Company had been expended by him.

Previous to the hearing before me the bankrupt had been under examination before the referee for some 30 days, and it is stated in the bankrupt's brief, and so appears from the evidence taken before the referee, that at those hearings the objecting creditor had, in effect, charged the bankrupt with having appropriated and secreted from his creditors money drawn by him from the Phœnix Woolen Company. The manner in which the bankrupt had disposed of the sum of $125,-242.98 had been long a subject of examination, and the bankrupt was so thoroughly aware of the necessity of accounting fully for the disposition of this sum that he had prepared and brought into court with him a written account showing on one side by items the amounts received from the Phœnix Woolen Company, and on the other what was marked in open court as a "Statement of Expenditures," the last item of which was as follows: "Premiums on life insurance in hands of S. Williams, also interest on above notes until paid, and family expenses for seven years, $45,903.08." The accounts were balanced by this last item. Not only does the face of the account show that it was prepared and intended to show the manner in which the sum of $125,-242.98 received by the bankrupt was expended, but it was in express terms presented to the court for that purpose.

After the bankrupt had testified to the receipt of $125,242.98, his counsel said to him, "Now, Mr. Dews, I wish you would explain what you did with that money." In reply to a question from the court, "Is there also an account of the disposition?" counsel for the bankrupt replied, "Yes, sir." The bankrupt then proceeded to explain the account of expenditures, concluding with the statement, "This used up the $125,000." It is clear beyond a reasonable doubt that the bankrupt intended that the court should accept this as a statement of what had been done with the sum of $125,000, and should believe that no part of this sum had been concealed or appropriated by the bankrupt. Yet it is an indisputable fact that in this very account there is a concealment of the method of disposing of some $30,000 of the bankrupt's receipts. The inaccuracy of the statement of expenditures is conceded, and an amended statement has been submitted by the bankrupt. The original statement contains items amounting to about $30,000, which were not paid out of the $125,000. The account,

therefore, is untrue in at least two particulars: First, in the insertion of sums aggregating $30,000 as payments made from the $125,000 when in fact they were not so paid; second, in the statement that the sum of $45,000 covered certain premiums, interest, and family expenses for seven years. The bankrupt's right to a discharge must therefore turn upon the question, were these inaccuracies due to mistake, or were they the result of an intentional and fraudulent manipulation of figures, for the purpose of making a showing as favorable as possible to the bankrupt, regardless of the actual facts. The bankrupt contends that the conceded inaccuracies were due to mistake. At the hearing, though this matter was strongly pressed by counsel for the objecting creditor, the counsel for the bankrupt made no reply thereto. Though this question was then before the court for decision, it seemed that the serious nature of the charge rendered it proper to give to the bankrupt the fullest opportunity for explanation, and permission was given to the bankrupt to file, within 30 days, a brief specially directed to the charges contained in the additional specifications. In re Dews (D. C.) 96 Fed. 181. This decision was rendered on June 24, 1899. Further time was granted, and the brief was finally filed after a period of about three months.

In the brief it is not contended that the account was correct. It is contended simply that this was an honest mistake, without any reasonable explanation of how the mistake arose. The statement of expenditures was deliberately prepared, and was on the final sheet of the account in a column parallel to that of receipts, not, as the brief states, on a separate sheet. The accounts were balanced, showing that the bankrupt fully understood that the important inquiry was the relation between the receipts and expenses. The bankrupt is a man of wide experience, and it is impossible to believe that he could have misunderstood the charge reiterated through some 30 hearings before the referee and again before the judge. He fully understood that he was to explain what he did with a specific sum of money, and adopted a method of accounting which enabled him to avoid any explanation of what he did with $30,000 of that sum. Whether this was done for the purpose of concealing the present possession of assets, or for the purpose of concealing extravagant expenditures, is immaterial.

This mode of accounting is further suspicious from the fact that it is a departure from the usual method of accounting. On the books of the Phœnix Woolen Company appeared not only the receipts of the bankrupt, but also an account of personal expenditures. A man of the bankrupt's experience, desiring in good faith to explain, would have resorted first to this account. It is idle for the bankrupt to claim that his account was the result of his best efforts to show his expenditures, when he had on the books an itemized account that would have shown the final item of the account presented to have been far in excess of $45,000. In order to work in as expenditures from $125,000 the moneys drawn in his wife's name, the bankrupt was compelled to ignore his personal account of expenditures on the books. Instead of referring to his books, he produced a large bundle of receipts. Had he taken the obvious course of inserting all expenditures shown on the books in addition to those he took from receipts, etc.,

it would have appeared that he had expended at least $30,000 more than he had received. The failure to resort to his personal account on the books is strong evidence of fraudulent intent.

Not only did the bankrupt insert items known to him not to have been paid out of the $125,000, but in order to do this he also knowingly omitted many items, as, for example, large sums given to his children upon their marriage, which could not have escaped his memory. The bankrupt's testimony is, in my opinion, false in the suppression of those items as well as of many other items appearing on the books.

The bankrupt contends that he had put in evidence the books of the Phœnix Woolen Company, both ledger and journal, and that they spoke for themselves, and that "when it is desired to ascertain what has become of the $125,000, or any other sum drawn by the bankrupt from the Phœnix Woolen Company, it is only necessary to examine the books." But this is not true. As a matter of fact, the books do not disclose fully how the bankrupt disposed of his money. Though the disposition of a large amount is shown, many items are simply for money drawn, without showing how it was applied. The bankrupt himself claimed that the books would not show what he did with the money, and that, therefore, he had resorted to "releases and one thing and another." The accounts contained in the books of the Phœnix Woolen Company were not offered by the bankrupt to support his account of expenditures.

He further contends that the accounts of Mrs. Dews were in the books, and spoke for themselves, and showed that a part of the expenditures were from money drawn by her. But this was not in any way referred to by the bankrupt in explaining and presenting his account. On the contrary, throughout the protracted examination before the referee, the bankrupt had vigorously and successfully resisted persistent attempts to examine the account of Mrs. Dews, and in the hearing before me the counsel for the bankrupt, so far from offering Mrs. Dews' account in evidence, strenuously insisted that it should not be examined. Had this effort to exclude Mrs. Dews' account been successful, there would have been no means of disputing the bankrupt's statement that he had paid those sums from his own withdrawals. I am satisfied that this account was prepared and presented with reliance upon a legal objection to prevent the introduction of Mrs. Dews' account and the exposure of the falsity of the statement of expenditures. It is absurd for the bankrupt to claim, as evidence of good faith, that he put in evidence the account of Mrs. Dews, to which he did not refer to support his account, and which conclusively disproves his account. Not until, against the bankrupt's objection, the court ruled that the objecting creditor had the right to examine the account of Mrs. Dews was any allusion made to the fact that certain items were paid out of Mrs. Dews'. withdrawals. The effect of the ruling was at once obvious to the bankrupt, and his forced allusion to Mrs. Dews' account, instead of affording evidence of good faith, is rather evidence that he quickly saw that the introduction of Mrs. Dews' account was a destruction of his own account, and exposed the fraudulent theory upon which it was prepared.

The offense was fully complete before any allusion to her account,

and is not in the least mitigated by certain expressions of the bank-: rupt which tend to show that he thoroughly understood the false prin-- ciple upon which his account was prepared, rather than that he intend-' ed to explain to the court facts which would entirely destroy his care-' fully prepared account. The bankrupt is thoroughly familiar with accounts, and it is impossible to believe that his original plan was to present an account, and then to supplement that account by evidence' that would show it untrue in fact as well as irresponsive to the in-' quiry, "What was done with the sum of $125,000?" After a most; cautious and careful examination of this case, I am convinced beyond: a reasonable doubt that the bankrupt is guilty as charged in the' specifications, and the discharge is therefore denied for the reasons. therein stated.