## In re ARNETT.

(District Court, W. D. Tennessee. December 26, 1901.)

**1. BANKRUPTCY — ADMINISTRATION OF ESTATE — CONTROLLING ACTION OF TRUSTEE—APPOINTMENT OF SPECIAL COUNSEL.**

The estate of a voluntary bankrupt was large, with numerous creditors, and its administration was complicated by claims of lien by creditors who had not submitted their claims to the bankruptcy court. Such creditors had also, after the bankruptcy, but before the receiver appointed by the court could act, through collusion with, or by the acquiescence of, the bankrupt, taken possession of the greater part of his property, consisting of farms and crops, by reason of which action further complications had arisen. *Held*, that under such circumstances the court would not permit the trustee to be governed in his action,

which might result in expensive litigation, by any particular creditor or group of creditors, but would, on its own motion, direct him to report fully to a special meeting of all the creditors, to be called for the purpose, and to be governed by such directions as they should adopt; that it would also appoint independent counsel, not interested for any of the creditors, to advise and act for the trustee in making any adjustment between the general creditors and the lien claimants, or in prosecuting any litigation which might be authorized by the creditors' meeting, and in the general administration of the estate.

2. SAME—CONTEMPT—DISPOSSESSING THE BANKRUPT AFTER PETITION FILED.

The bankrupt and the mortgage trustee of a secured creditor fined $50 each, the one for surrendering and the other for taking possession of the mortgaged property from the bankrupt after the petition in bankruptcy had been filed.

## In Bankruptcy.

When the voluntary petition in this case was filed, the bankrupt was a general merchant at Tiptonville, Tenn., dealing largely in cotton purchased by him and acquired from tenants to whom he had made advances on their crops, just being gathered and marketed. Also he was himself a planter owning large and numerous farms, growing cotton and other crops on the shares and otherwise. He shipped his cotton to Memphis, mostly to Godfrey Frank & Co., his factors and brokers, who had advanced him large sums of money, supplies, and other necessaries, for which dealings they held mortgages or deeds of trust with powers of sale upon the lands and crops of the bankrupt. The schedules show a very large estate, aggregating more than $100,000, consisting of the farms, crops, merchandise and debts due by notes, accounts, and mortgages to secure them. They also show a very large indebtedness; that to Godfrey Frank & Co. being roughly estimated at more than $60,000, secured for the most part by mortgage and deeds of trust. The unsecured creditors are roughly estimated at about $70,000. The rules of the district court for the Western district of Tennessee require a voluntary bankrupt within 24 hours after his petition is filed to surrender his assets to the referee in bankruptcy, who is appointed a caretaker or special receiver until the trustee is appointed. Before the referee could reach Tiptonville to take possession, the trustee of the Godfrey Frank & Co. mortgage took possession of lands conveyed and large quantities of cotton, some in the seed in the gins and on the farms, and some already baled for market. Whether this was done by collusion with the bankrupt, his acquiescence, or without his consent, does not yet fully appear. At the first meeting of creditors a trustee was not elected by those present, as none received the statutory vote, but the referee appointed as trustee one of the persons voted for, residing at Tiptonville; but by a majority vote of those present combining the creditors represented by a firm of Memphis lawyers and one at Nashville, the Memphis firm, and particularly one of its members, was appointed "to represent the trustee." At the first meeting also the bankrupt was examined, but, owing to the fact that his books were imperfectly and unskillfully kept, and other books proper to be kept were wanting or not produced, the creditors were not satisfied with the examination. The mortgage trustee or manager of the Godfrey Frank & Co. firm was present with his attorney, and offered to submit to examination as to his securities, debts, and accounts, but this was declined. The attorney for the Godfrey Frank & Co. firm was the same attorney who had filed the bankrupt's petition in bankruptcy, and represented him in the proceedings. The mortgage trustee of Godfrey Frank & Co. advertised the lands for sale on December 28, 1901. The trustee in bankruptcy filed a petition before the referee asking for an injunction, which the referee refused. No petition for review was filed, but at the request of the trustee in bankruptcy the referee certified the facts contained in his report and the questions of law to the district judge. The matter coming on for hearing before him, he directed that a rule to show cause should issue returnable January 2, 1902, upon the motion for a preliminary injunction against the sale, and mean-

time directed a restraining order forbidding the sale as advertised. He also directed that the rule to show cause should include a notice of proceedings for contempt against the bankrupt, Godfrey Frank & Co., and their mortgage trustee, for dispossessing the bankrupt of his possession of the property by collusion or otherwise after the adjudication in bankruptcy, and for the bankrupt's failure to surrender the property to the referee, as receiver, until a trustee in bankruptcy could be appointed. Pending the proceedings the court also directed the trustee to make report for instructions to a special meeting of the creditors, and appointed independent counsel to advise the trustee in the execution of the order and the management of the estate.

Myers & Banks, for creditors.

L. Lehman, for bankrupt and Godfrey Frank & Co.

HAMMOND, J. (after stating the facts). It is the desire of the court to commit the questions growing out of the securities and liens claimed by Godfrey Frank & Co. and other mortgage or lien creditors, if any, to the creditors themselves at a special meeting called to consider the subject, and see what litigation, if any, the creditors will or will not sanction. This matter should be carefully considered by the creditors themselves, upon full information, before any litigation is undertaken; and the trustee should not sue until reasonable efforts have been made to adjust the matters with the secured creditors without litigation, upon terms satisfactory to the other creditors, acting in a body at a general meeting held for the purpose. The discretion of the trustee in such matters should not be controlled by any particular creditors, groups of creditors, or combinations of them. He should be under the direction only of the whole body, acting at formal meetings under the superintendence of the referee or judge, as the statute provides; for the general scheme of the bankruptcy statute for the administration of estates would be defeated if creditors were allowed to control, direct, or advise the trustee in any other manner than by such formal meetings. The plan, therefore, of creditors, or a majority of them, selecting some one or more of their own attorneys as the legal adviser of the trustee is not approved by the court. The minority of the creditors are entitled to share in the direction of affairs as the questions arise from time to time, and to take part in considering what instructions should be given to the trustee. A general control of his discretion without this by any particular creditors or their attorneys, is not permissible. This informal method of controlling the administration of the trustee might be very well where the assets are small, and the interests involved inconsiderable; but where the estates are large, involving amounts approaching or exceeding $100,000, as in this case, it is wisest to submit the direction of the trustee to all the creditors in the formal meetings provided by law. For this reason the court has determined in this case to require the trustee to so proceed, and that he shall be advised by independent and impartial counsel, selected by the court for that purpose, who does not represent any of the creditors.

The court is not satisfied with the tendency of this case to drift into litigation between the trustee and secured creditors in possession or claiming possession of the most valuable part of the assets

without preliminary consideration by the creditors in a formal meeting called for the purpose of having all the facts accurately ascertained and understood before any litigation is undertaken by the trustee. It may be that when all the facts are disclosed the creditors will adjust the matters without the expense of litigation. The clerk is therefore directed to enter the following order:

It appearing to the court from a petition for review filed under general order 27 of the supreme court, or a certificate of the referee in lieu thereof, from the report of the referee, the general record of the case, and statements of counsel at the bar in the proceedings heretofore had, that this is a very large estate, with numerous creditors; that it is much complicated by claims of priority of liens and securities for creditors who have not submitted their claims to this bankruptcy court, but are acting independently thereof in realizing their securities, whereby further complications are entailed and litigation is threatened; it also appearing that by collusion with or acquiescence of the bankrupt the mortgage trustee of one of the secured creditors, it is alleged, has obtained possession of certain property claimed by him since the adjudication in this case and before the temporary receiver or trustee could act in the premises, from which still further complications have ensued; and it also appearing that expensive litigation may arise unless the trustee be carefully advised by the creditors themselves as to the adjustment of these complications, and that necessary means should be taken to provide against any unnecessary litigation, and that efforts should be made to so arrange the affairs of the bankrupt's estate as to avoid loss by unnecessary conflicts of interest as between the trustee and secured creditors, if possible; and it also appearing that large bodies of agricultural lands are involved, for the tenancy and profit of which speedy arrangements should be made for the coming year by agreement with creditors holding the securities aforesaid: It is ordered by the court, upon its own motion, pending the proceedings already taken and the future administration of the estate in this court, that the trustee in bankruptcy shall make in writing and submit to a special meeting of the creditors for their action in the premises, to be called under the provisions of general order 25 of the supreme court, a detailed and complete report of the condition of this estate, its assets of every kind, secured and unsecured, and especially of all liens, mortgages, or preferred claims of every kind whatever, and of all attainable information in relation thereto, to the end that the creditors, by their resolutions in writing, may advise him as to the management of these affairs, the adjustment of these liens, and whether the creditors wish to incur the expenses of any litigation in relation thereto. The referee is directed to issue such notices and take such steps as are necessary to call a special meeting of the creditors under the general order 25 aforesaid to consider the foregoing matters and the general condition of this estate and its management by the trustee. The trustee is further directed to proceed under this order with all possible diligence, and make as speedy a report as possible. And the court being further of the opinion that the trustee should be independently advised in these matters and in the administration of the estate by

counsel; and that the discretion of the trustee should not be under the control of particular creditors, or groups of creditors, or combinations of creditors, but under the control of formal meetings of the whole body of the creditors as provided by the statute and the general orders of the supreme court for the enforcement thereof, it is also now, ordered that Albert W. Biggs, Esq., of Trenton, Tenn., be, and he is. hereby, appointed special counsel to the trustee to advise him in the premises and in the management of this estate; that said counsel shall supervise and counsel the trustee in the preparation of the report to be made to the creditors; that the said trustee, under the advice of counsel aforesaid, and exercising his own judgment and discretion, shall submit to the creditors in the report aforesaid his own propositions for the management of the affairs, the adjustment of the liens, and the security of the best interests of the estate, and especially if any litigation should be instituted, and, if so, to what extent, and in what manner, and how, as trustee, he proposes to proceed in those matters requiring any extraordinary expenditures for the purposes aforesaid, so that the creditors may take such action as they may wish. The clerk is directed to send by mail a copy of this order to the referee, to the trustee, and to the special counsel hereinbefore named. All of which is ordered to be entered of record, all other matters being reserved.

HAMMOND, J. After a very complete and satisfactory report made by the trustee, under the guidance of the special counsel, to a meeting of the creditors, a compromise resulted between them and Godfrey Frank & Co., whereby that firm paid into the creditors' fund $5,000 and took over the property held as security in full satisfaction of the secured debt, which compromise the court approves. But there remains the necessity of vindicating the authority of the law and practice of the court in the matter of the contempt of the bankrupt and the mortgage trustee of Godfrey Frank & Co. in surrendering the property held by the bankrupt to the mortgage trustee after the petition in bankruptcy had been filed. The bankrupt should either have kept the property for the bankruptcy trustee, or surrendered it under the rules to the referee as caretaker. 109 Fed. iii., iv. Since so satisfactory a compromise has been reached, the court will impose only a fine of $50 each, but this must not be regarded as a measure of the court's judgment of the offense committed. So ordered.